MATTHEW H. LOGAN and Others v. SAMUEL W. McGINNIS.

1. Subscribing witnesses to a will may testify their opinion of the sanity of the testator, without having previously testified to facts as the ground of their opinion.

2. When a party is permitted to read part of a deposition, the opposite party cannot be allowed to read the other parts for the sole purpose of contradicting the testimony.

3. A contract by which an aged person binds himself to dispose of his estate by will in a certain way, in consideration of certain provisions for his support for life, is not contrary to any rule of policy.

4. And were such person to fail to make a will, equity, no doubt, would decree a conveyance, and a jury would give damages to the amount of the value of the property.—Per ROGERS, J.

ERROR to the District Court of Allegheny.

*Sept.* 17. This was an action of ejectment, in which the heirs of Joseph Logan were plaintiffs, and Samuel W. McGinnis was defendant.

The title upon which the defendant relied, was an article of agreement executed between Joseph Logan and himself, and the will of Joseph Logan, both of which the plaintiffs alleged were obtained by undue influence, and while the said Joseph was incompetent to make them, by reason of mental infirmity.

The article of agreement and the will are dated 29th May, 1848, and the will was proved 21st June following. By the agreement Logan covenanted "to will and bequeath to McGinnis, his heirs and assigns, to be held by them for ever, all his real estate of whatever description, as presently held by him, with an encumbrance not exceeding $400, to be paid by said McGinnis, as also to put said McGinnis in possession of the same as held by said Logan, on his signature of this article," in consideration of which McGinnis covenanted "to support and maintain Logan and his wife, during their natural life, in a decent, respectable, and comfortable manner, providing them in lodging, boarding, clothing, and attendance, good and sufficient. Also to pay legatees or heirs of Logan to any amount not exceeding $400."

It appeared that McGinnis did not sign the article until a few days after the will was executed by Logan. In the will Logan devised as follows: "I give and bequeath to my step-son, McGinnis, his heirs and assigns, all my real estate of whatever description, to be by them held for ever, on the following conditions: 1. That said

McGinnis bind himself by legal obligations to keep and maintain, respectably and comfortably, in lodging, food, clothing, and attendance, myself and my wife, during our natural life; 2. That said McGinnis pay certain sums, amounting to 400 dollars, to certain legatees.    Said McGinnis to pay all my just debts."

Upon the trial the defendant, having called one of the subscribing witnesses of the will, proposed to ask him as to the soundness of the testator's mind, to which the plaintiffs objected upon the ground that the witness had not stated, or been examined as to, any facts upon which to found the opinion.    The objection was overruled, and the admission of the evidence was the subject of the second bill of exceptions.

The defendant proposed to ask the same witness this question— "Did you discover anything that indicated want of mind?" which being objected to, and the objection overruled, was the subject of the third bill.

The defendant then read the deposition of one James McGinnis, taken by him, with the exception of the deponent's answers to the seventh and eighth interrogatories, which answers he declined reading, without any objection being taken thereto by the plaintiffs. The evidence being closed for the defendant, the plaintiffs offered to read the omitted answers, and then to call a witness to the stand for the purpose of contradicting the testimony given by the deponent McGinnis in those answers.    The defendant objected to this, and the objection being sustained, the plaintiffs took their fourth bill.

The plaintiffs then requested the Court to charge—

1. That the will in this case devises the estate on the condition that the said Samuel McGinnis bind himself by legal obligations to keep, maintain, &c. &c.; that the defendant in this case, the devisee in the will, has never complied with said condition, either in the lifetime of the testator nor subsequent to his death, nor in the lifetime of his widow; he has no title under the will, and the plaintiffs are entitled to recover.

2. That the agreement of the 29th May, 1848, is not a compliance with the condition of the will, it being an agreement binding the testator *to will*, and not executed by the defendant until two or three days after its date; and he thereby agrees to ·do certain things, in *consideration* of the testator binding himself to make a will; the whole agreement pointing to *future acts* to be done by the

testator, and the whole agreement being based on such future acts as the consideration.

3. That the whole agreement of 29th May, 1848, is void, it being contrary to the policy of the law to permit the hands of aged persons to be tied up; and their rights of disposing of their property by will narrowed down to certain specified objects.

4. That said agreement, by binding Joseph Logan to will his land to defendant, passes no title to defendant.

5. That in law, under both the will and agreement, no title passed to the defendant.

6. That the opinions of witnesses, whether in favour of sanity or incapacity, ought not to be received or taken into consideration by the jury, further than said opinions are based upon and warranted by the facts stated by the witnesses respectively.

7. That if the jury believe that shortly prior to this will being made, the testator was unsound in his mind and memory, then all general presumption of sanity is destroyed, and they must be fully and clearly satisfied, that at the time this will *was made*, the testator enjoyed a lucid interval, and was of sound and disposing mind and memory, and the proof of such *lucid interval* at the execution of the will, must be clearly made out by *two witnesses*, or other evidence equivalent thereto.

8. That if the jury believe that a state of general derangement or imbecility of mind be proved at any time prior to the making of this will and agreement, then the defendant must prove the mental capacity of the grantor to make the will, at the time it was done: and it is not sufficient in such case for the defendant to show that the devisor could return appropriate answers to plain or common questions, but he must prove that the testator was of sound mind and disposing memory.

9. That if the jury believe that at the time the will was made, the testator was feeble in body and weak in mind, and that the will was procured by undue influence, the plaintiffs are entitled to recover.

10. That if the testator was imposed on in his weak state; believed that said agreement prevented him from making another will; and that when he sent for his will and the agreement, they were refused to him, then the defendant is not entitled to the land.

11. That if the jury under the evidence think it doubtful on which side their verdict should be, then the fact that the plaintiffs are heirs-at-law, should in this case, as in the case of a will of

doubtful meaning, entitle them to every fair intendment in their favour.

The Court reserved the consideration of the first five of these points. With regard to the others, the Court (LOWRIE, J.) filed as a charge a copy of them with the words, "charge so," written opposite to Nos. 7, 8, 9, 10, and 11—and with the words, "Refused in favour of sanity," written opposite to No. 6.

The verdict was in favour of defendant, and the Court, subsequently deciding the reserved points in his favour, directed judgment to be entered upon the verdict. To this judgment the plaintiffs excepted.

The assignment of errors was to the admission or rejection of the evidence, as specified in the foregoing bills; to the charge, in not charging as requested upon points numbered 1, 2, 3, 4, and 5,—in not charging as requested upon point 6, and in not answering that point, "refused in favour of sanity" being no answer, or not such an one as should have been given; and in not answering points numbered 7, 8, 10, and 11.

*Woods*, for the plaintiffs in error.

1. That the witness should have testified to facts upon which to ground an opinion as to the testator's sanity, before being called upon to give his opinion. Hiester *v.* Laird, 1 W. & S. 245; Given *v.* Albert, 5 W. & S. 333; Grabill *v.* Barr, 5 Barr, 443; Irish *v.* Smith, 8 S. & R. 582.

2. The question, which is the subject of the third bill, was leading and improper.

3. Our offer was to prove facts directly to contradict McGinnis's statement, not to contradict him by his own declaration.

4. The will and agreement were one transaction, though McGinnis did not sign the agreement for some days after its date. He never gave the required obligation, and failed to comply with the condition. The agreement is not the obligation required in the will. It points to future acts to be done by testator.

5. The points 7, 8, 10, and 11, are not answered. The Court may mean that it intended to charge so, but we are entitled to direct, specific answers.

*Metcalf* and *Loomis*, contrà.

1. The witness, being a subscribing witness, could be properly examined as to his opinion, before stating any facts as a basis of such opinion. Poole *v.* Richardson, 3 Mass. R. 330.

2. It is too late to object to the question here, for the first time, as being leading. That objection should have been made on the trial, when, if necessary, we could have modified the form of our question.

3. A party cannot introduce testimony for the bare purpose of contradicting it.

4. The assignment of error, with regard to the disposition made of the first five points, is wrong. Those points were reserved, not charged upon, and the assignment of error should have been to the judgment upon them. But regarding the error as substantially so assigned, the action of the Court was right.

5. There was no exception taken to the charge. Under our rules, exceptions to a charge must be specific and in writing; a general exception to the whole charge is not allowed. Points must be so framed (Rule 36), that the answer of the Court may be full, direct, and explicit, by a simple affirmative or negative, and so these were in effect answered.

The opinion of this Court was delivered by

ROGERS, J.—The subscribing witnesses to a will may testify their opinion of the sanity of the testator: other witnesses may testify to facts, from which the Court and jury may form an opinion whether the testator was of sound mind. This is ruled in Poole *v.* Richardson, 3 Mass. R. 330. This is a distinction which I have never heard disputed, for the very object of placing them around the testator, is to try, judge, and determine whether he is competent to execute the instrument. The subscribing witnesses testify their opinion; other witnesses testify to the appearance of the testator or to any other particular fact, from which the state of his mind may be inferred. It is to the latter class of cases, not to the former, the authorities cited, apply. This disposes of the second bill; but in addition, it is plain the testimony of the witness was to facts, not opinions, and would have been competent testimony independent of the circumstance that he was a subscribing witness.

There is nothing in the objection to the third bill that it was a leading question. It was not opposed on that ground. If it had been, the defendants would have been at liberty to vary the form of the question.

It is contended there was error in refusing to allow the plaintiffs to examine George Glass, for the purpose of contradicting the answers of James McGinnis to the 7th and 8th interrogatories by the

defendant. The defendant, as appears, took the deposition of McGinnis, and read it on the trial, without exception, declining, for reasons satisfactory to himself, to read the answers to the 7th and 8th interrogatories. This the plaintiffs might have prevented by an exception; for a party who offers in evidence a deposition taken in his behalf must read the whole, and cannot select portions and omit others, as is ruled in Southwark Insurance Company v. Knight, 6 Whart. 329. Instead of pursuing this obvious course, they allowed a portion of it to be read, and now endeavour to cure this omission by turning round and reading the answers themselves, for the sole purpose of contradicting the testimony. This cannot be done.. It has been ruled (which is an analogous case) that you have no right to propound questions to a witness for the mere purpose of discrediting him by testimony of other witnesses to the same fact. To permit this course would lead to outrages on the rights of witnesses, who may be entrapped by artful and insidious questions asked for the sole purpose of bringing them into discredit and reproach. Witnesses have rights, as well as parties, which are entitled to the protection of the Court.

It is insisted there is error in not charging as requested in plaintiffs' 1st, 2d, 3d, 4th, and 5th points. The error, it is true, is incorrectly assigned, as the points referred to were reserved by the Court and were not charged on at all. The assignment should have been to the judgment of the Court on the points reserved. We think, however, the error is substantially assigned. If necessary, we would allow the party to amend, as we would not permit the title to be tripped up by a mere matter of form. The error goes to the title. Was there then error in the judgment of the Court on the points reserved? We think not. The testator being proved to be of sound, disposing mind and understanding, it passes a title to the land in controversy to the defendant. It is not true that the defendant failed to comply with the conditions contained in the will. The article of 29th May, 1848, which is contemporaneous with the will, is a full compliance with all the stipulations contained in the contract. We see nothing in the agreement contrary to any known rule of policy. It is nothing more than a contract, by which a person in the decline of life makes a comfortable provision for himself and wife, for their old age. If they can make an absolute conveyance of all their property for such a consideration, as they undoubtedly can, what is to prevent them from doing the same thing in the form of a will? Here the parties

have carried the contract into effect in good faith, and it is heirs who have no equity, who are endeavouring to disturb the arrangement. Were it even an executory agreement, the party having failed to make a will, equity, no doubt, would decree a conveyance, and a jury would give damages to the amount of the value of the property. But be this as it may, we see nothing to invalidate the title which the defendant acquired under the will. The case cited from 2 W. & S. 145, Todd's case, has no application whatever. All that is ruled there is that when one in contemplation of a journey thus begins an informal testamentary paper,—"My wish, desire, and intention now is, that if I should not return (which I will, no preventing Providence), what I own shall be divided as follows,"—upon his return and subsequent death, the instrument ought not to be admitted to probate. It is very clear that it was a provisional arrangement, to be effective only in case he never returned from his contemplated journey. We do not see the slightest resemblance to this case.

It is sufficient answer to the 5th and 6th errors that no exception is taken to the charge, and, if it had been, so far as regards the 7th, 8th, 9th, 10th, and 11th points, the Court, so I understand it, gave them an affirmative, direct, and specific answer.

Judgment affirmed.