## Hitchcock Estate.

Argued March 13, 1956. Before STERN, C. J., JONES, BELL, MUSMANNO and ARNOLD, JJ.

John G. Buchanan, with him Danald L. McCaskey, Cloyd R. Mellott and Smith, Buchanan, Ingersoll, Rodewald & Eckert, for appellant.

Ralph S. Snyder, Deputy Attorney General, with him Leo J. Kelly, Special Deputy Attorney General, and Herbert B. Cohen, Attorney General, for appellee.

OPINION BY MR. JUSTICE JONES, June 25, 1956:

The question in this case arises out of a joint will of a husband and wife which they executed as a part of and in pursuance of their written agreement which combined their separate estates as a tenancy in common and provided for the ultimate disposition of the combined estates by their joint will upon the death of the survivor. The issue involved is whether claims of the husband's testamentary beneficiaries, which were "compromised" at the audit of the estate of the deceased wife, who survived her husband, were debts of her estate and chargeable as such in ascertaining the clear value of the estate subject to inheritance tax.

The learned auditing judge, in assigned reliance on Neller Estate, 356 Pa. 628, 53 A. 2d 122, and Mills Estate, 367 Pa. 504, 80 A. 2d 809, held the claims to be

debts of the deceased survivor and entered a decree nisi disallowing the Commonwealth's claim for taxes on the clear value of the estate without allowance of the alleged "debts" as deductions. The court en banc (the auditing judge dissenting) sustained exceptions to the decree nisi and held that the claims were inheritances and not debts and consequently were not deductible. A final decree was entered accordingly from which the executor has appealed. The facts are not in dispute.

On September 2, 1922, Halbert Kellogg Hitchcock and Grace Miller Hitchcock, his wife, executed a written instrument under seal which embraced both an agreement to make a joint will of certain terms and a joint will carrying into effect the provisions of the agreement. In addition to the signatures of the parties, the instrument contained the usual testamentary attestation clause signed by two subscribing witnesses. The instrument is quite extensive, showing in detail the respective beneficiaries and the extent of their prospective interests under the joint will according to schedule incorporated therein. The agreement contains, inter alia, the following.

"WHEREAS, Halbert Kellogg Hitchcock and Grace Miller Hitchcock, husband and wife, both of the City of Pittsburgh, County of Allegheny and State of Pennsylvania, have agreed with each other that they shall combine their respective estates and shall hold and enjoy the same as tenants in common and that the last survivor shall enjoy the joint estate or entire property possessed by both at the time of the death of the first to die so long as the other shall live, with the right of the last survivor to convert to his or her own personal use all of the income therefrom and as much of the principal as the last survivor may see fit to use without let or hindrance or accountability to anyone save the survivor; and that at the death of the last survivor,

one half of the then remaining estate shall be distributed to the devisees of the said Halbert Kellogg Hitchcock, as hereinafter provided and the other half shall be distributed to the devisees of the said Grace Miller Hitchcock, as hereinafter provided.

"Now, therefore, in order to carry out the intent and purposes of the foregoing agreement, the said Halbert Kellogg Hitchcock and Grace Miller Hitchcock, his wife, both being of sound mind, and memory, do hereby make and publish this their last will and testament in the manner following hereby revoking all former wills which they may have made."

The writing further declared: "THIRTEENTH SECTION. It is thoroughly understood by both of the parties making this will that the foregoing instrument is not only a will, but a binding contract existing between the parties hereto and that the same cannot be changed by either party without the consent of the other, except as to the distribution of that half of the joint estate, if any, which ultimately will go to the devisees of the last survivor, but it is hereby agreed between the parties hereto that the last survivor may advance to the devisees of the other party such a sum or sums as would reasonably not exceed one half of the amount which would eventually accrue to the said devisees upon the death of the last survivor, the same with simple interest at seven (7) percent to be deducted from the amount which the said beneficiary would receive at the death of the last survivor."

As contemplated by the above-quoted recital, the testamentary portion of the instrument provided for distribution upon the death of the survivor of one-half of the then remaining combined estates to named devisees and legatees of Halbert Kellogg Hitchcock and one-half to named beneficiaries of Grace Miller Hitchcock. A joint codicil, executed by Mr. and Mrs. Hitchcock on

March 12, 1928, altered the distribution to the relatives of the husband as contained in the joint will but made no other change therein.

Halbert Hitchcock died November 24, 1930. Thereafter his wife, who survived him, enjoyed the use of the combined estates of herself and her husband as her own, with absolute power of consumption, in accordance with the provisions of the agreement and joint will upon the final settlement of the husband's estate by his wife as executrix.

Twelve years after her husband's death (viz., on December 14, 1942), Mrs. Hitchcock executed a codicil to the joint will wherein she purported to be of the opinion that her obligation under the agreement and joint will was to distribute to the named relatives of her husband one-half of the value of the combined estates of herself and husband as of the date of *his* death and not of the survivor. In the time intervening since his death, the aggregate value of the combined estates had increased considerably. And, so, Mrs. Hitchcock, in apparent belief that the increase in the value of the combined estates over what it had been at the date of her husband's death was her own to do with by will as she chose, concluded that the participating interest of Mr. Hitchcock's relatives under the joint will was but one-half of the value of the combined estates at the date of his death. On December 15, 1942, Mrs. Hitchcock executed another codicil amending the codicil of the day before in certain particulars. The amendatory codicil did not alter the codicil of December 14, 1942, in any manner presently material.

Mrs. Hitchcock died on April 22, 1952, domiciled in Pittsburgh. After her death the joint will and codicils were duly admitted to probate by the Register of Allegheny County who granted letters testamentary thereon to the Fidelity Trust Company as executor.

In direct opposition to the provisions of Mrs. Hitchcock's separate codicil of December 14, 1942, Mr. Hitchcock's relatives, who were named beneficiaries under the joint will, claimed one-half of the property owned by Mrs. Hitchcock at the time of her death. At the audit of the executor's account, a compromise was reached whereby the testamentary claimants, who were members of Mr. Hitchcock's family, were to receive forty-three percent of the assets accounted for by the executor of Mrs. Hitchcock's estate, subject to the payment by them of forty-three per cent of the debts, funeral and administration expenses and Federal estate and State inheritance taxes.

It is the contention of the appellant executor that the amount to be paid to the relatives of Mr. Hitchcock in settlement of their testamentary claims constitutes a proper deduction in calculating the clear value of the estate subject to tax under Section 2 of the Pennsylvania Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2302. The Commonwealth, on the other hand, contends that the amount paid to the relatives of Halbert Hitchcock in discharge of their claims as devisees and legatees under the joint will of Mr. and Mrs. Hitchcock is an inheritance and not a debt of the deceased wife and consequently not an allowable deduction from the gross estate in ascertaining the clear value subject to tax.

An indebtedness of a decedent is deductible under the Pennsylvania Transfer Inheritance Tax Act in ascertaining the clear value of the estate subject to tax to the extent that it was "contracted bona fide and for an adequate and full consideration in money or money's worth . . . ." The Act of December 21, 1951, P. L. 1713, 72 PS §2302, amending Section 2 of the Act of June 20, 1919, P. L. 521, as theretofore amended, expressly so provides.

The Commonwealth concedes that the contract between Mr. and Mrs. Hitchcock providing for their joint will was entered into bona fide, that the agreement was a binding and enforceable contract and that a donee beneficiary may enforce a contract made for his benefit. It is unnecessary, therefore, to repeat here the many citations of the appellant in support of the foregoing propositions which are not only uncontroverted but incontrovertible.

The question is whether the amounts paid by the executor of Mrs. Hitchcock's estate to the members of Mr. Hitchcock's family in settlement of their claims under the joint will of the Hitchcocks were contracted for an adequate and full consideration in money or money's worth. The plain and obvious answer is that they were not; they were testamentary benefactions and not debts.

The only consideration passing between Mr. and Mrs. Hitchcock for the agreement to make a joint will was their reciprocal promises, each to the other, as to the testamentary disposition to be made of what remained of their combined estates upon the death of the survivor. While such promises were sufficient to support the agreement and to constitute it a binding and enforceable contract, they were not an adequate and full consideration in money or money's worth. The appellant, however, contends that the payments were deductible debts (and induced the auditing judge into so believing) on the strength of an ingenious argument ostensibly founded on our decisions in the *Neller* and *Mills* cases, cit. supra. The defect in the contention is that it entirely misses the point of those cases, which depended upon a controlling circumstance wholly wanting here.

The crucial factor in the *Neller* case, which served to make the husband and wife's reciprocal promises and

undertakings, in respect of their several property rights and liabilities, an adequate and full consideration in money or money's worth, was the fact that the contract of settlement (under which the wife's claim against the husband's estate later arose) was a bona fide separation agreement.

That such was the *ratio decendendi* in the *Neller* case (which the *Mills* case later followed in principle) is not open to cavil. The effect of the separation agreement was very earnestly mooted in this court as a reading of the majority and dissenting opinions in the *Neller* case will readily reveal. Under the Federal Estate Tax Act, the relinquishment of a marital right was not a consideration in money or money's worth for the creation of a debt deductible in ascertaining the clear value of the estate subject to tax. And, the requirement in the Pennsylvania Transfer Inheritance Tax Act in such regard was *ipsissimis verbis* with the cognate Federal provision. Nevertheless, this court held in *Neller Estate,* in a four to three decision, that the adjustment and relinquishment of marital property rights by the husband and wife in their bona fide separation agreement constituted consideration in money or money's worth. The determinative element was that the contract creating the debt was a separation agreement between the husband and wife settling for good their material affairs and not an amicable arrangement between them while they would continue to live together in amity.

The rationale of the *Neller* case is patent. Mr. Chief Justice MAXEY, speaking for the court in that case, declared that "when this husband and wife *decided to separate and the husband promised his wife in writing* that he would support her by paying the sums stipulated, this promise gave rise to a debt. The amount of support due at his death was as much a debt as would

have been any arrearages in the weekly sums he had agreed to pay her for her support" (Emphasis supplied). And, in *Mills Estate,* supra, Mr. Justice STEARNE, who there spoke for a unanimous court, after quoting the foregoing from the *Neller* case, said that "Since the decision in *Neller Estate,* supra, it is no longer an open question in Pennsylvania that a *bona fide* separation agreement between a husband and wife providing for a payment at the husband's death, constitutes a *debt* and is consideration in money or money's worth." Elsewhere, the opinion in *Mills Estate* confirmed the statement of Mr. Justice (now Chief Justice) STERN in *Stadtfeld Estate,* 359 Pa. 147, 58 A. 2d 478, that "Neller Estate . . . held that the share of a decedent's estate due to his widow *under a separation agreement* is not subject to the Pennsylvania transfer inheritance tax since the payment made to the widow out of the estate is not in the nature of a legacy but is merely the liquidation of a debt" (Emphasis supplied).

In *Mills Estate,* where the rule of the *Neller* case, that the reciprocal promises and undertakings of a husband and wife in a bona fide separation agreement constitutes consideration in money or money's worth, was followed, there were no findings from which it could be inferred that the consideration was also "adequate and full". For that reason, *Mills Estate* was remanded for findings appropriate to the question of the adequacy and fullness of the consideration after "a more searching inquiry . . . in the court below concerning the ages of the parties, the extent of their respective property, the prospects of financial advancement and the earning capacity of the husband and an analysis of that which the wife relinquished and what she was to receive." Such inquiry had nothing to do, however, with whether the consideration was in money or money's

worth. Where, as in the instant case, the consideration for the agreement is *not* in money or money's worth, it is unnecessary to consider the further requirement of adequacy and fullness.

The meaning of *Neller Estate* is plain and now firmly fixed; and we have no intention of departing from it. But, at the same time, we are not disposed to see its true intendment stretched into authority for a proposition that has neither reason nor merit to justify it. If what the appellant here contends for were to receive judicial sanction, the intended impact of the Pennsylvania transfer inheritance tax could be successfully avoided by any husband and wife by the simple expedient of a contract to make a joint will disposing of their combined property on the death of the survivor to persons to whom they wished it to go, coupled with the execution of a joint will in pursuance of their agreement.

It has been argued, however, that the Hitchcocks entered into their agreement for a joint will without any intention of freeing their estates from liability for transfer inheritance taxes. So much may readily be conceded. But, a taxable's motive in minimizing his liability is irrelevant so long as his tax return does not exceed the law's relevant allowances. In *Superior Oil Company v. State of Mississippi,* 280 U.S. 390, 395-396, Mr. Justice HOLMES succinctly expressed the law's attitude to tax avoidance when he said,—"The only purpose of the vendor here was to escape taxation. . . . The fact that it desired to evade the law, as it is called, is immaterial, because the very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it." See, also, *Bullen v. Wisconsin,* 240 U.S. 625, 630. In *Atlantic Coast Line Railroad Co. v. Phillips,* 332 U.S. 168, 172-173, Mr. Justice FRANKFURTER said that "As to the astuteness of tax-

payers in ordering their affairs so as to minimize taxes, we have said that 'the very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it.' . . . This is so because 'nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions.' " In *City Stores Co. v. Philadelphia*, 376 Pa. 482, 488, 103 A. 2d 664, Mr. Chief Justice STERN aptly recognized for this court that "If a person is about to conduct a transaction which is taxable in one jurisdiction but not in another, there is no apparent reason why he should be barred from performing it in the jurisdiction where it would be tax-free, and this is true even if the only reason for the choice was that of escaping the tax, since, if one has a legal right to do a particular thing, the law will not inquire into his motive for doing it [citing cases]."

The appellant's remaining contention is that Mrs. Hitchcock, by her codicil of December 14, 1942, breached her agreement with her husband and nullified, pro tanto, their joint will and that the compromise of the claims of Mr. Hitchcock's relatives was in settlement of "a genuine dispute" over the amount payable to the claimants as damages for Mrs. Hitchcock's breach of contract and, hence, a debt paid by the estate —a truly fanciful proposition. Mrs. Hitchcock was incapable of breaching her agreement with her husband, containing the joint will, so long as a court of competent jurisdiction was sitting to adjudicate disputes arising out of wills or agreements relating thereto. The joint will agreement was not an ambulatory document. It was executed in triplicate, and proof of its existence was at all times certain. By its express terms, it was "not only a will, but a binding contract between the parties." It is indeed anomalous to have the appellant argue, in one breath, the binding and enforceable effect

of the agreement and then, in the next, have it assert that Mrs. Hitchcock's alleged breach of the agreement had rendered it unenforceable.

The joint will agreement was not susceptible of being breached by Mrs. Hitchcock's sole action. If her separate codicil was in accord with the intent of the joint will, then what she provided by the codicil was but superfluous confirmation of what the husband's relatives were entitled to receive by virtue of the will. If, on the other hand, the codicil violated the intent of the joint will, the husband's relatives would still take according to the provisions of the will. The above quoted Thirteenth Section of the agreement expressly provided that the will could not "be changed by either party without the consent of the other, except as to the distribution of that half of the joint estate, if any, which ultimately will go to the devisees of the last survivor . . . ." It is plain enough, therefore, that, while Mrs. Hitchcock, as the survivor, could change the distribution of the half of the joint estate going to her devisees, she was powerless to change the distribution of the half that was to go to the husband's beneficiaries. Nor could she change what, according to the will, constituted the quantum of half of the estate for distribution to the testamentary beneficiaries. Whatever the husband's relatives were entitled to receive of the estate remaining after Mrs. Hitchcock's death they took under and by virtue of the joint will and not otherwise.

Decree affirmed; the estate for costs.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

The question raised at the audit of the account of the executor of Mrs. Hitchcock's will is an important

one, namely, is the amount which was payable to Mr. Hitchcock's devisees under a joint will and binding contract executed by Mr. and Mrs. Hitchcock, properly deductible as a debt of Mrs. Hitchcock, in computing the Pennsylvania Inheritance Tax.

The sealed contract provided that Mr. and Mrs. Hitchcock agreed (1) to combine their respective estates; (2) to hold the same as tenants in common; and (3) "that the last survivor shall enjoy the *joint estate or entire property* * possessed by both at the time of the death of the first to die so long as the other shall his or her own personal use all of the income therefrom and as much of the principal as the last survivor may see fit to use . . . ." In other words, the survivor could live, with the right of the last survivor to convert to enjoy the entire combined estates with power of personal consumption of the principal. The only condition imposed by the agreement was that "at the death of the last survivor one-half of the *then remaining* [combined] estate** shall be distributed to the devisees of . . . Hitchcock."

---

* Italics throughout, ours.

** Mrs. Hitchcock many years after Mr. Hitchcock's death executed a codicil which changed the share of Mr. Hitchcock's devisees from one-half of the combined estates of herself and her husband which remained at her death, to one-half of the amount of the estate which she and her husband owned as tenants in common *at the date of his death*. Mr. Hitchcock's devisees contended that they were entitled under the joint agreement of 1922 to one-half of the combined estates *as they existed at the death of Mrs. Hitchcock*. The parties made an amicable family settlement under which members of Mr. Hitchcock's family received 43% of the assets remaining at Mrs. Hitchcock's death subject to the payment by them of 43% of the debts, funeral and administrative expenses and State Inheritance and Federal Estate taxes. "Family agreements or settlements are . . . favored in the law and when fair are valid and will be upheld whenever possible: Edelman's Estate, 336 Pa. 4, 10, 6 A. 2d 511; Iacovino v. Caterino, 332 Pa. 556, 2 A. 2d 828; Braun-

582

The instrument signed by Mr. and Mrs. Hitchcock on September 2, 1922 was a combined joint will and joint contract under seal and as such the contractual part thereof was absolutely binding on both parties: *Gredler Estate*, 361 Pa. 384, 65 A. 2d 404; *Cramer v. McKinney*, 355 Pa. 202, 49 A. 2d 374; *Kocher Estate*, 354 Pa. 81, 46 A. 2d 488; *Craig's Estate*, 298 Pa. 235, 148 A. 83; *Cridge's Estate*, 289 Pa. 331, 137 A. 455; *McGinley's Estate*, 257 Pa. 478, 101 A. 807; *Shroyer v. Smith*, 204 Pa. 310, 54 A. 24; *Hoffner's Estate*, 161 Pa. 331, 29 A. 33; *Smith v. Tuit*, 127 Pa. 341, 17 A. 995; *Taylor v. Mitchell*, 87 Pa. 518; *Johnson v. McCue*, 34 Pa. 180; *Logan v. McGinnis*, 12 Pa. 27; *Brinker v. Brinker*, 7 Pa. 53; *Culhane's Estate*, 133 Pa. Superior Ct. 339, 2 A. 2d 567; *Park v. Park*, 39 Pa. Superior Ct. 212; *Lewallen's Estate*, 27 Pa. Superior Ct. 320; *Conlan v. Conlan*, 20 Pa. Superior Ct. 45. "An agreement to make a will or to [give or] devise one's property to a particular person or for a particular purpose is binding and irrevocable when supported by what the law regards as valid consideration": *Gredler Estate*, 361 Pa., supra.

Mr. Hitchcock's devisees * undoubtedly *had the right to enforce* the contract made by Mr. and Mrs. Hitchcock—if Mrs. Hitchcock breached it, they could have presented their claim as creditors at the audit of the account of Mrs. Hitchcock's executor: *Gredler Estate*, 361 Pa. supra; *Craig's Estate*, 298 Pa., supra; *Hoffner's Estate*, 161 Pa., supra; or they could have sued as third party donee beneficiaries in view of the

schweiger's Estate, 322 Pa. 394, 185 A. 753.": *Fry v. Stetson*, 370 Pa. 132, 135, 87 A. 2d 305. This was a fair, valid compromise family agreement. I agree with the majority that this does not alter or affect the question here involved.

* It would have been more accurate to have called them legatees, devisees and testamentary beneficiaries.

fact that the provision here involved was unquestionably made for their benefit: Cf. *Commonwealth v. Great American Indemnity Co.,* 312 Pa. 183, 167 A. 793; *Logan v. Glass,* 338 Pa. 489 14 A. 2d 306; *Logan v. Glass,* 136 Pa. Superior Ct. 221, 7 A. 2d 116; *Philipsborn v. 17th and Chestnut Holding Corp.,* 111 Pa. Superior Ct. 9; Restatement, Contracts, §§133, 135, 139.

The Inheritance Tax Act of Pennsylvania of June 20, 1919, P. L. 521, as amended by the Act of December 21, 1951, P. L. 1713, provides: "Section 2. All taxes imposed by this act shall be imposed upon the clear value of the property subject to the tax and shall be at the rate of . . . *In ascertaining the clear value* of such estates, *the only deductions* to be allowed from the gross values of such estates . . . *shall be the debts of the decedent,* reasonable and customary funeral expenses . . . Provided, That the deductions herein allowed in the case of *any indebtedness* of the decedent shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide for an adequate and full consideration in money or money's worth . . ."

It is clear, and indisputable, that this indebtedness of the decedent, Mrs. Hitchcock, *was founded upon a binding, enforceable agreement*; and the majority opinion as well as the Commonwealth admits that it was contracted *bona fide and with no intent to defraud the Commonwealth.* Three questions remain: (a) was it a debt within the meaning of the Inheritance Tax Act; (b) was it contracted for an adequate and full consideration; and (c) in money or money's worth? Each of these questions has already been decided, adversely to the Commonwealth, by prior decisions of this Court.

An analysis of the cases of *Mills Estate,* 367 Pa. 504, 80 A. 2d 809, and *Neller Estate,* 356 Pa. 628, 53 A. 2d 122, will demonstrate that the majority opinion can

not be justified unless those cases are repudiated and the Inheritance Tax Act is rewritten.

In *Mills Estate,* 367 Pa., supra, this Court attempted to put at rest any doubt on the questions which the Commonwealth has once again raised in this appeal. In that case a husband and his wife entered into a so-called separation or *post-nuptial agreement* in and by which he agreed to pay his wife a stipulated amount per month for her support, and likewise *agreed to make a will leaving all his estate to his wife.* At his death *she claimed his entire estate* of $40,000., not as a legatee under his will, but as a creditor. This Court allowed her claim *as a creditor,* and specifically held that the Commonwealth was not entitled to any inheritance tax *because her claim constituted a debt in money or money's worth.* The majority in the instant case reached the conclusion it did by completely ignoring the fact that in the *Mills* case, supra, the husband promised in the agreement to leave *all his estate* to his wife, and the Court held that she was entitled *as a creditor,* not to support for the future, but *to the husband's entire estate,* (provided the consideration was adequate and full). The evidence as to adequacy was not sufficiently clear and therefore this Court remanded the case to the lower Court for the sole purpose of enabling it to take further evidence in order to determine whether the consideration was adequate and full. Justice STEARNE, speaking for the Court, said (pages 505, 506-508) :

"The question raised by this appeal is whether the amount awarded to a widow under the terms of an agreement for support constitutes a debt of the husband 'contracted bona fide and for an adequate and full consideration in money or money's worth.' The learned court below ruled that it did.

. . .

"On May 17, 1946, James H. Mills and his wife, Anna Irene Mills, entered into a *post-nuptial agreement*,\* under seal, and which preceded a divorce. . . . The consideration named was ' . . . the mutual undertakings of the parties hereto as hereinafter contained, and in settlement, adjustment and compromise of all property questions and rights and liability for support and maintenance' . . . He agreed : to pay his wife $300 a month while he was employed, and after his retirement $150 per month; real estate held by them in entireties could be sold after divorce and the husband's retirement and proceeds divided equally; if such real estate was not sold before his death the husband's interest therein was to go to the wife; *he also agreed to make a will leaving all his estate to the wife*; policies of life insurance payable to wife were to be irrevocable. The wife agreed that real estate held by them in entireties could be sold after divorce and her husband's retirement and proceeds equally divided; in the event that the wife predeceased her husband before sale of the real estate, the husband was to receive a one third interest therein and *the wife agreed to make a will leaving her husband one third of her estate*. . . . His will was probated. The Commonwealth assessed a transfer inheritance tax on the amount payable to the widow. At the audit of the account of the executrix, the widow presented her claim as creditor, which was allowed.

"In Neller Estate, 356 Pa. 628, 53 A. 2d 122, it was decided by a majority of this Court, contra to the doctrine in the Federal jurisdiction, that *a wife's waiver of her marital rights* may constitute the consideration for a contractually created debt of the husband. . . . In Stadtfeld Estate, 359 Pa. 147, 58 A. 2d 478, we reaffirmed the doctrine of Neller Estate. Mr. Justice

---

\* Italics throughout, ours.

Horace Stern said, p. 151: '. . . in Neller Estate, 356 Pa. 628, 53 A. 2d 122, which held that *the share of a decedent's estate due to his widow* under a separation agreement is not subject to the Pennsylvania transfer inheritance tax since the payment made to the widow out of the estate *is not in the nature of a legacy but is merely the liquidation of a debt.'*

. . .

"The Commonwealth in the present case challenges the ruling of the court below that the present agreement *creates a debt* due the widow which meets the statutory requirement that also it must be founded upon 'an adequate and full consideration *in money or money's worth.'*

. . .

"Since the decision in Neller Estate, supra, it is no longer an open question in Pennsylvania that a bona fide separation agreement between a husband and wife *providing for a payment at the husband's death, constitutes a debt and is consideration in money or money's worth.*

. . .

". . . While the amount cannot always in every case be arithmetically calculated, the inquiry must satisfy the hearing judge not only that the separation agreement was bona fide but that the amount of the debt represented a substantially adequate and full consideration in money or money's worth, for only to that extent is it a deductible tax exemption."

In *Neller Estate,* 356 Pa., supra, cited and quoted with approval in *Mills Estate,* 367 Pa., supra, the Court held that an agreement between husband and wife in which *the husband agreed to leave his wife a sum equal to one-quarter of his estate,* was a binding and enforceable agreement and *created a debt based on a consideration of money or money's worth,* and was a

proper deduction from the husband's estate *and was not subject to transfer inheritance tax.* The Court, speaking through Chief Justice MAXEY, said (pages 629-633):

"This is an appeal from the decree of the Orphans' Court of York County denying the claim of the Commonwealth for certain 'transfer inheritance taxes' claimed on a portion of the estate of Harry C. Neller, who died January 18, 1945, intestate. Surviving him were two daughters of his marriage with Kathryn E. Neller, and a son by a former marriage. *Kathryn E. Neller presented her claim against the estate for one fourth of the net estate,* pursuant to a 'separation agreement' which she entered into with the decedent on October 30, 1934. In it the husband admitted his liability for the support of his wife, and she agreed that she would not press any nonsupport charge against him and in lieu of her claim for support that she would accept $75 per week until April 1, 1935, and thereafter the sum of $50 per week for and during her natural lifetime. The husband agreed to make these payments and also that *'at the time of his death there shall be paid from his estate to the wife a sum equal to one fourth of the net amount of said estate'.* . . . In the adjudication the wife was awarded, according to this agreement, *one fourth of the estate,* amounting to $10,950.77. On this sum of money the Commonwealth makes its tax claim.

. . .

"Certainly the Legislature did not intend by the Transfer Inheritance Tax Act of June 20, 1919, and its amendments, that the money used by an executor or administrator to pay the debts a deceased debtor intended to have paid only after his death should be subject to a transfer tax. Many individuals late in life incur debts whose payments they do not intend to be

made until after their death, for the reason that their chief assets consist of the promises in their life insurance policies or because their estate is in such form that their debts cannot be liquidated until their estate is converted into money or its equivalent. . . . There is no basis for a logical distinction in imposing 'transfer taxes', between a transfer of money from a decedent's estate to pay his general debts and a transfer of money from a decedent's estate to pay a debt whose time of payment was formally fixed 'at or after his death'. . . .

"The very name 'Transfer Inheritance Tax' by which the tax imposed by the Act of 1919 is generally referred to indicates that the transfer which is taxable arises from an inheritance and not from a creditor-debtor relationship based on a contract.

". . . 'If this decedent had agreed in writing for the same considerations to pay his wife a fixed and definite sum of money, or had executed and delivered to her a promissory note for the same purpose payable at his death, it could hardly be successfully argued that he would not have created a debt against his estate, and we fail to see any difference between the contract as written and the two methods just mentioned, nor are we able to distinguish between the effect of this contract and an antenuptial agreement insofar as the payment of transfer inheritance tax is concerned.' "

In limiting the principle laid down by the Mills and Neller cases to debts arising out of a separation agreement, the majority opinion (1) utterly disregards (a) the facts in those cases, namely, the wife claimed as a creditor—not future support at the monthly rate fixed by the agreement, but—her husband's entire estate in Mills, and one-quarter of his estate in Neller, and (b) the analogies in, and (c) the broad principles and language of those opinions; and (2) rewrites the Pennsylvania Inheritance Tax Act. There is no sound

basis, reason or logic for the majority's aforesaid restriction; nor *is consideration for a debt arising between husband and wife limited to a separation agreement;* nor has this Court any right to rewrite the Inheritance Tax Act.

To summarize: (1) the several and mutual promises and covenants, indisputably and unquestionably, created and constituted a debt which was due by Mrs. Hitchcock to the devisees and beneficiaries of Mr. Hitchcock's will; (2) there was not only valid, but adequate and full consideration * passing to Mrs. Hitchcock for her promise to leave one-half of their combined estates to the devisees and legatees of Mr. Hitchcock's will; (3) if the promise in the *Mills* case to leave his wife *his entire estate* by will, and in the *Neller* case to leave his wife one-quarter of his estate at his death, constituted a debt of the decedent which was contracted bona fide for an adequate and full consideration in money or money's worth,—as this Court in those cases so held—it is equally and just as certainly, a debt in this case which was contracted bona fide for an adequate and full consideration in money or money's worth. The only difference in the consideration between the *Mills* and the *Neller* cases on the one hand and the instant case on the other hand, is the difference between costume jewelry worth a small sum and a diamond necklace worth a large fortune.

The majority opinion asserts (1) that the obligations created by this sealed contract "were testamentary benefactions and not debts"; and (2) "while such

---

* The majority opinion does not discuss whether the consideration was adequate and full; an examination of the facts disclosed by the record will demonstrate that the test laid down in *Mills Estate*, 367 Pa., supra, for a determination of whether the consideration for the wife's promise was "adequate and full" has been more than fully met.

promises were sufficient to support the agreement and to constitute it a binding and enforceable contract, they were not an adequate and full consideration in money or money's worth"; and (3) "in the instant case the consideration for the agreement is not in money or money's worth". The majority opinion and the decision of the Court thereunder not only atrophies the *Neller* and *Mills* cases—it repudiates and nullifies them. While giving lip service to *Mills* and *Neller,* the majority opinion says in ipsissimis verbis that the law is what the *Mills* and *Neller* cases in ipsissimis verbis said it was not. What the prior cases really held and how clearly the principles they asserted have been repudiated is made clear by Justice JONES' dissenting opinion in *Neller Estate,* 356 Pa. 628, 637, 53 A. 2d 122:

"The majority opinion seems unmistakably to chart as sure a course to effective tax avoidance as one could possibly imagine. Under the rationale of the decision, a wife's *postnuptially* agreed upon share of her husband's estate, payable after his death, can be relieved from liability for Pennsylvania's transfer inheritance tax *if the wife's waiver of a marital right* be made the consideration for her contractually specified property interest in her husband's post-mortem estate.

"As I see it, all that will be necessary for any married man, resident in Pennsylvania, to do henceforth in order to obtain the tax-free situation, as above indicated, with respect to his estate will be for him and his spouse to enter into a postnuptial contract whereby she agrees 'that she will not press any nonsupport charges against [him] . . . but in lieu of a support order will accept' a specified sum monthly for the husband's life upon the further condition 'that at the time of his death there shall be paid [to her] from his estate . . . a sum equal to [any agreed upon portion] of the net amount of his said estate'; and the husband, on his own

part, binds himself, 'his heirs, executors, administrators and assigns' for the payment of the sums set forth in the contract. Such is precisely the situation which the instant decision covers; and the majority hold that the amount so payable to the wife out of her husband's estate after his death is in discharge of a debt and, therefore, deductible in ascertaining the clear value of his net estate subject to tax. With that, I cannot agree.

"Nor is the decision in any wise buttressed by the fact that, at the time of the execution of the agreement here involved, the parties thereto had separated and were then 'living separate and apart' because of 'divers disputes and unhappy differences [which had] arisen' between them or that, several months after the execution of the agreement, the wife obtained an absolute divorce which did not terminate the agreement because of a cognate saving clause therein. *It matters not whether the parties,* when thus contracting, are living separate and apart or *are living together in amity and continue so to do until separated by death. The postnuptial relinquishment by the one of a marital right against the other is no more a 'consideration in money or money's worth' in the one instance than in the other.*" Yet the majority opinion reaffirms *Neller Estate* and then says it does not apply because the parties herein are living together in amity.

The present majority opinion not only flies in the teeth of the opinions and decisions in the *Neller* and *Mills* cases, but it necessarily rewrites the Inheritance Tax Act * so as to make it read: "In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values of such estates . . . shall be *debts* of the decedent . . . Provided, that the deduc-

---

* Act of June 20, 1919, as amended by the Act of December 21, 1951.

tions herein allowed in the case of any indebtedness of the decedent shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide for adequate and full consideration in money or money's worth . . ." [addition] *"if and only if the promise was contained in a separation agreement."* This is a usurpation of the power of the Legislature. It is within the power and province of the Legislature, but not within the power or province of a Court, to change or rewrite the statutes of Pennsylvania. The right and power to modify or otherwise change the Inheritance Tax Acts of Pennsylvania lies solely in the Legislature who can, if they disagree with a Court's interpretation of a statute, change or rewrite that statute—as they could have done ever since 1946 when the *Neller* decision was handed down by this Court—and provide that a promise by a spouse to leave by his or her will all of his or her estate to a surviving spouse or to others does not constitute a promise or debt of the decedent which was contracted for a consideration in money or money's worth.

I would neither atrophy nor negate nor reverse the *Mills* and *Neller* decisions, but would reaffirm them and the principles they unquestionably stand for; and I would reverse the decree of the lower Court.