[Civ. No. 35968. Second Dist., Div. Five. Nov. 18, 1970.]

Estate of ROBERT F. SISK, Deceased.
MARIAN SISK STEWART, Plaintiff and Appellant, v.
HOUSTON I. FLOURNOY, as State Controller,
Defendant and Respondent.

## COUNSEL

Robert A. Stewart, Jr., for Plaintiff and Appellant.

Myron Siedorf, Walter H. Miller and Phyllis Kelly Fairbanks for Defendant and Respondent.

## OPINION

**STEPHENS, J.**—This appeal is from an order fixing inheritance tax. The opening brief of appellant (decedent's daughter, Marian) sufficiently sets forth the initial facts relative to this case:[1] "The decedent, Robert, and his wife, Cepha, made mutual wills in 1948 pursuant to an oral agreement whereby all the property of each was left to the survivor, and all the property of the survivor was left to [Marian]. The estate of Robert and Cepha was all community property. At the death of Cepha in 1957, her share of the community property went to Robert in accordance with the agreement.[2] Robert died in 1964. In 1966, [Marian] obtained a judgment imposing a constructive trust upon the estate, making it distributable to her pursuant to the agreement. . . . The probate court sustained [Marian's] objections [to the Controller's proposed inheritance tax], found as a fact that the agreement for mutual wills was not an *inter vivos* transfer, and fixed inheritance tax accordingly. . . . On the State Controller's appeal, this court reversed, holding as a matter of law that the oral agreement for mutual wills had been an *inter vivos* transfer by the decedent effective at the death of the predeceased spouse, and 'subject to the inheritance tax in accordance with the petition of the State Controller (subject to verifying the accuracy of computation).' "

On this appeal, Marian claims that in computing the present inheritance tax due, the life estate received by Robert in Cepha's share of the community property should be allowed as consideration for the transfer he made to Marian of a remainder interest in Robert's share of the community property. Marian says that she does not contend that Robert received "adequate and full" consideration for the transfer he made which would nullify any inheritance tax at this time. She restates her position as conceding that the transfer is taxable, but only to the extent that it was made for less than adequate and full consideration, and that only the excess of the value of the transfer over the value of the consideration received for it is subject to the tax.[3]

---

[1]For a complete statement of facts, see *Estate of Sisk* (1969) 269 Cal.App.2d 823 [75 Cal.Rptr. 549], where we reversed a ruling of the superior court that no inheritance tax was payable upon the transfer of the residue of decedent's estate to the appellant here.

[2]While this statement is correct, Cepha's will was never probated, and Robert took the property as though it came to him by virtue of being community property. (Prob. Code, § 201.)

[3]The numerator of the fraction is the value of Robert's life estate in one-half the community property, evaluated at the death of his wife. The denominator is the value of the remainder interest transferred by Robert to his daughter, Marian (which equals the value of one-half the community property at Cepha's death, less the value of

It is the position of the Controller that at the time of the transfer which took place by virtue of the irrevocable agreement (made irrevocable by Cepha's death), the only consideration passing between Robert and Cepha for the agreement to make joint wills was their reciprocal promise as to the testamentary disposition to be made of what remained of their combined estates upon the death of the survivor. The Controller cites *Hitchcock Estate,* 385 Pa. 569 [124 A.2d 360], as authority for the proposition that "[w]hile such promises were sufficient to support the agreement and to constitute it a binding and enforceable contract, they were not an adequate and full consideration in money or money's worth" and that Revenue and Taxation Code section 13641 requires "adequate and full consideration in money or money's worth." We do not reach the need for an in-depth analysis of what is or is not "adequate and full consideration in money or money's worth" in the determination of the instant case.

In support of her theory, Marian cites the case of *Estate of Cooper,* 274 Cal.App.2d 70 [78 Cal.Rptr. 740]. In that case, by joint and mutual will, M and B each gave "unto the survivor of [M and B] all and any real and personal property [each] owned . . . for his or her own use and benefit forever." Thereafter, in separate paragraphs, M and B named the same beneficiaries which would take on the death of the spouse surviving, as between them. M was the first to die, and an inheritance tax report was filed in M's estate taxing B on a life estate, and taxing the beneficiaries named in the separate paragraph of the will on the remainder interests. The amount of this tax on the remaindermen was fixed by compromise approved by the court; no explanation of the basis for fixing the tax amount was shown by the record. The order of distribution provided "that in pursuance of and according to the provisions of the last will of said deceased, and by operation of law, the residue of cash, and the property hereinafter described, and all other property belonging to said estate . . . be and is hereby distributed to [B], widow of decedent." Subsequently, B died and an inheritance tax report was filed wherein the taxes were computed as though B owned the properties in fee and the persons interested took under her will as testamentary beneficiaries, and not as the remaindermen of a life estate. After a hearing on objections to this report, the probate court declared: "That [B] had a life interest in the assets of the Estate of [M], subject to a reasonable use by her for her own use and benefit" and "That the Controller . . . ., in determining the tax in the estate of [M] taxed a life interest of [B], *and taxed the remainder to the other named devisees.*" (Italics added.) The probate court then fixed the inheritance tax at a substantially smaller amount, and it was from that order that the appeal was taken. The con-

---

Robert's life estate as of the time of the transfer, i.e., the date of Cepha's death, based upon Revenue and Taxation Code, section 13641, subdivision (b).)

troversy there was stated to center on the interpretation of the order made in M's estate distributing the property, giving B what appeared to be a fee simple absolute. The remaindermen noted that the Controller would have collected no tax at all in the estate of M if B had taken the entire fee (due to the widow's exemption). They pointed out that the persons taxed as remaindermen in M's estate were the same ones sought to be taxed on the same property, but as devisees of B in B's estate proceedings.

The court in *Cooper* recognized that distribution may be ordered only in accordance with the testamentary instrument, but that the intent of the inheritance tax law is that the tax be measured by beneficial succession, it being a succession tax levied on the privilege of succeeding to the property; that in fixing inheritance taxes, the probate court therefore need not consider merely the legal interests passing under the will. It referred to *Estate of Rath,* 10 Cal.2d 399 [75 P.2d 509, 115 A.L.R. 836] as illustrating a distinction between the effect of a decree of distribution and the taxation of interests so distributed. In *Cooper,* there was nothing dehors the will for the probate court to consider in determining succession and inheritance taxes. It concluded that the probate court determined that *the devisees other than B were in fact interested and subject to a taxing upon their interest,* but that B was entitled to receive distribution of the legal title. The probate court limited the estate of B by including in its order of distribution the following language: "[The property] is hereby distributed to [B] . . . in pursuance of and according to the provisions of the last will of said deceased [M]." On the basis of that reasoning, the *Cooper* court recognized that there was established a life estate in the surviving spouse, and that interest included the power of use and consumption. Again, for authority to support its conclusion, it relied upon language contained in *Rath:* " '[4] Whenever there is in a will a devise in qualified terms but followed by a direction for the devisee to leave the property to a third person, it creates a life estate in the devisee, with remainder over to the third person. . . . [5] Where the instrument as a whole provides a limitation over, a life estate may be created even if it is not expressly declared.' " (At p. 79.) Thereupon, the fixing of the interests and thus establishing the basis for the inheritance tax on the basis of the life estate in B and the remainder over to the other devisees was affirmed.

We find that the facts of *Rath, supra,* are even more closely akin to those of the case before us, though we agree with Marian's argument that much of the rationale of *Cooper* is applicable here. In *Rath,* the husband and wife made a written agreement whereby the wife promised to will certain property to her husband if he survived her, the husband agreeing to leave such property to his wife's nephews on his own death. The wife died first, and her will left the property to her husband in fee simple absolute. *No inherit-*

*ance tax was levied upon the nephews, though the written agreement was specifically made known to the taxing authorities at the time of the preparation of the inheritance tax report.* When the husband died, his will devised the property to the nephews, as agreed. In the probate of the husband's estate, inheritance taxes were fixed on the nephews as being devisees under his will. The nephews appealed, contending that the husband had only a life estate and that they took as remaindermen under the wife's will. The court held that because of the separate written agreement, the husband was trustee for his wife's nephews, having legal title, but in equity having only a life estate. So concluding, the court found that the nephews should have been taxed in the wife's probate as remaindermen of the life estate, and not as devisees of the fee under the husband's will. As may readily be seen, one difference between *Rath* and the instant case is that the contract in *Rath* was in writing, while here, it was oral. Another important distinction is that in *Rath* the remaindermen were not only named, but there was no possibility of defeasance, as in the instant case. (Marian's interest was doubly contingent: i.e. (1), *upon her surviving Robert;* and (2), upon Robert's not exhausting the whole of the estate during his lifetime, which he had the right to do under the agreement.) The last distinction to be drawn from the facts of the two cases is that in *Rath, the taxing authorities were made known of the contract* which limited the estate of the husband, while in the instant case, the agreement was not made known until the husband's death and the termination of the two contingencies affecting the remainderman interest to which Marian was entitled. (There is also the effort by Robert to violate his agreement with Cepha, while no such action was present in *Rath.*) Of course, there is also the difference of fact as to the property involved, for in *Rath,* the problem only involved the wife's property, not that of both the husband and the wife. This does not alter the problem of life estate and remainderman interest. The cases are in fact parallel in the aspect of the effective date of the remainderman's interest, for that interest, whatever its contingencies or lack thereof, existed as of the date of death of the first spouse to die; in the instant case, this was the date of Cepha's death, while in *Rath,* it was the date of Mrs. Rath's demise. This is not to say, however, that the effective date for tax purposes is not different. We found in the first *Sisk* case[4] that the resulting property interests were parallel with those existent in *Rath,* once the equity court in *Sisk* had declared there was an enforceable contract. This, then, brings us to the crucial question of whether Marian should have been taxed as a remainderman in Cepha's estate (but was not), thus avoiding an inheritance tax upon that interest in the estate of Robert. As we noted in the governing opinion in the first *Sisk* case, by the effect of the agreement, Marian was made remainderman as to

---

[4]*Estate of Sisk* (1969) 269 Cal.App.2d 823 [75 Cal.Rptr. 549].

both Robert's and Cepha's one-half interests, exactly as were the remaindermen in *Cooper*. However, by virtue of the Controller's concession to the effect that he sought only to tax one-half of the total of the estates of Cepha and Robert, we there noted, "We . . . concern ourselves with the question of whether the one-half having never been subject to disposition by Cepha but now passing to Marian by virtue of the constructive trust is taxable." Cepha's one-half (and presumably any interest Marian had in that half) is not the subject of the Controller's claim to inheritance tax, i.e., in Robert's estate. While, as we analogize further, this need not have been the position of the Controller, we accepted that as a fact in treating with the estate subject to inheritance tax, and we do so herein, again calling attention to footnote 9 in the earlier opinion: "We do not here determine whether the State Controller may seek reopening for the purpose of revising the inheritance tax in Cepha's case upon the theory that there was concealed from him the agreement here imposing a constructive trust upon the property passing to Robert from Cepha's estate." The Controller sought, unsuccessfully, to impose a gift tax upon Marian as to the interest she received from Cepha at Cepha's death. (*Stewart* v. *State of California,* 8 Cal.App.3d 449 [87 Cal.Rptr. 672].) While we recognized that the remainderman interest as to both halves (Cepha's and Robert's) became an irrevocable equitable interest possessed by Marian, subject to the conditions which we have heretofore mentioned, *it is the fact of transferring that equitable interest into a legal one which distinguishes this case from either Rath or Cooper.* Under the agreement between Cepha and Robert, had Robert performed his obligation as Cepha relied upon him to do, he would have willed all that remained of the total estate to Marian and it would have been taxed in Robert's estate in full unless, by some equity action outside of probate, Marian had established her remainderman interest (as she has done in the instant circumstance).[5] In either event, an equity action to impose her interest upon the total estate, apparently subject to disposition by the will of Robert, was necessary to establish the fact of interest, and the timing of this equity action was at

---

[5]In *Stewart* v. *State of California, supra* (at p. 453), the court said: "It is clear from the record that Robert was obligated by his contract with Cepha to transfer and will the community property to Marian, and that, if he had carried out his contract, she would have taken the property by succession under Robert's will. Whether by calculation or inadvertently, Robert ignored his obligations under his contract with Cepha as a consequence of which Marian by the device of an action to impress a constructive trust, caused him to perform the contract he had made with his wife.

"It seems to us that the enforcement of the obligation to transfer by will through the device of an action to impress a constructive trust, does not change the inherent nature of the succession nor the obligation to pay an inheritance tax on the entire amount of property transferred. The principles applicable here are clearly set out in *In re Kidd's Estate* (1907) 188 N.Y. 274 [80 N.E. 924], cited in *Estate of Sisk,* 269 Cal.App.2d 823 [75 Cal.Rptr. 549]."

Marian's option. True, she could have had this same equitable interest recognized at any time after the death of Cepha, but she would have had no reason to do so until she determined that Robert chose not to abide by that agreement, except of course to effectuate her interest as a matter of law, rather than of equity, and thus expose herself to the liability for inheritance tax within the estate of Cepha. Marian rested upon what to her was an unquestioned belief that Robert would not violate his trust. By this action she chose to obtain her beneficial succession through the estate of Robert, rather than from the estate of Cepha. The fact, then, that she was required to enforce the equitable right and transform it, through her quasi-specific performance action after the death of Robert, determined the time the legal ownership of the property came to her. It was at this time that there was *declared* her inheritable right. Here, an event dehors the will—the order of the probate court making determination of interest — determined the transferee succeeding to the estate, and effected the transfer of the trust property. (*See Estate of Barter,* 30 Cal. 2d 549, 557 [184 P.2d 305].)

We hold that in the absence of making known to the taxing authorities an interest established dehors the will, where there is required a judicial determination to resolve the interest in the estate, that interest is subject to the inheritance tax after the interest has been declared and, as in *Rath,* that interest should be taxed in the estate of the second of the spouses to die. We determine that Robert sought to avoid the agreement and hence gave nothing so far as he was concerned.[6] Robert thus not having given anything under the agreement, and Marian having made no effort to inform the taxing authorities of her interest prior to Robert's death, Marian may not now urge that a tax other than a tax on the full amount of Robert's one-half interest in the estate is applicable, Marian, in effect, having elected the time at which she would be subjected to an inheritance tax.

The order is affirmed.

Reppy, J., concurred.

Kaus, P. J., concurred in the result.

A petition for a rehearing was denied December 8, 1970, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied February 10, 1971.

---

[6]Marian's analogy of the principles of "widow's election" so far as Robert taking under the provisions of the agreement, while intriguing, is inapplicable under the facts existing here. Suffice it to say that where the survivor sought *to avoid* the obligations of the agreement (as Robert sought to do here), he certainly makes no *election* which bestows a tax benefit upon him, his estate, heirs, or devisees.