Argued and submitted July 22, reversed and remanded in part with instructions and otherwise affirmed October 2, 1985, reconsideration granted January 29, 1986
See 77 Or App 569, 713 P2d 625 (1986)

## CASCADE INTERNATIONAL INVESTMENT CO., LTD, dba Capital Management Co., Ltd.,
*Appellant,*

*v.*

## KEENE,
*Defendant,*

*and*

## F.F.K. PROFIT SHARING AND RETIREMENT PLAN TRUST et al,
*Respondents.*

(16-82-07747; CA A33409)

707 P2d 610

Mark W. Perrin, Eugene, argued the cause for appellant. With him on the briefs were Perrin, Gartland & Doyle, Dean S. Kaufman, and Kaufman & Stewart, Eugene.

Harold D. Gillis, Eugene, argued the cause and filed the brief for respondents F.F.K. Profit Sharing and Retirement Plan Trust, and Foster F. Keene.

Terence J. Hammons, Eugene, waived appearance for respondent Jeffry Elder.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff is the seller under a land sale contract. It brought this action seeking, *inter alia,* (1) specific performance of the contract against defendants Keene, Elder and Foster F. Keene, M.D., P.C. Profit Sharing and Retirement Plan Trust (Trust I); (2) a creditor's bill against F.F.K. Profit Sharing and Retirement Plan Trust (Trust II); and (3) remedies against Keene individually and as trustee of Trust I. The court granted summary judgment for plaintiff against Trust I on the specific performance claim. After trial, the court denied plaintiff any relief against the other defendants.[1] Plaintiff appeals, and we affirm in part and reverse in part.

Plaintiff and Trust I entered into the contract in 1980. Keene is a trustee of Trust I and the principal beneficiary of that trust. In May, 1982, Wilhardt, one of Keene's and the professional corporation's attorneys,[2] telephoned plaintiff's general partner, Michael, and proposed that Trust I's rights and duties under the contract be assigned to Elder and, in turn, from Elder to Keene. Michael expressed curiosity about why the intervening assignment to Elder, a real estate broker, was contemplated. Michael recalled Wilhardt's answer as being that "it would look * * * funny if the property were transferred directly from the Trust to the beneficiary of the Trust." Wilhardt subsequently transmitted the two assignment instruments to Michael and requested that he sign them to signify plaintiff's consent. The documents had been signed by Keene and Elder before Wilhardt sent them to Michael.

The assignment documents provide that each assignee

"* * * accepts the foregoing sale, assignment, and transfer and promises and agrees to timely meet all purchase payments

---

[1] In addition to the defendants referred to in this paragraph, Foster F. Keene, M.D., P.C., (the corporation) was named a defendant in one of the numerous amended complaints plaintiff tendered in this case. The claim against the corporation "to pierce the corporate veil" was dismissed pursuant to ORCP 21, and it is an issue in this appeal only insofar as it relates to attorney fees.

[2] Wilhardt was associated with Keene's principal attorney, Mercer. Her testimony indicates that much, if not all, that she did in connection with the relevant events was at Mercer's direction. Plaintiff subpoenaed Mercer as a witness, but he failed to appear.

required by the contract and to faithly *[sic]* perform all covenants, stipulations, and agreements therein occurring on and after May ___, 1982, or otherwise attributable to the period commencing on said date and continuing thereafter, and Assignor is responsible for the period prior thereto. Assignee shall indemnify and save Assignor harmless from any and all claims, demands, actions, causes of action, suits, proceedings, damages, liabilities, and costs and expenses of every nature whatsoever and relating to the contract or the premises sold thereunder arising on or after May ___, 1982."

The documents also provide:

"Assignor warrants and covenants to and with Assignee that:

"(a)  [the assignor] is the owner of the vendee's interest in the contract;

"(b)  the unpaid principal balance of the purchase price under the contract is not less than _____ as of the date hereof;

"(c)  all interest accrued under the contract through _____ has been paid."

The documents specify that the assignors are to

"* * * remain liable under all the terms, covenants, and conditions of the contract as originally executed until the covenants under the contract have been fully performed."

As indicated in the quoted portions of the assignments, the blanks were not filled in.

After consulting with his attorney, Michael signed the instruments and returned them to Wilhardt in late May. As of that time Trust I was current in its payments under the contract. All of the payments from the inception of the contract through the execution of the assignments had been drawn against the accounts of Trust I or the professional corporation. In June, 1982, Keene made the purchaser's monthly payment by his personal check. No further payments were made.

In July or August, Elder and Keene (the latter in his individual capacity and in his capacity as trustee of Trust I, respectively) signed documents entitled "Cancellation of Assignment and Conveyance," purporting to cancel the two

assignments. At approximately the same time, Trust II was created. Keene explained in his testimony:

"There was less money coming in to Trust I than was required for payments on the Kreklau property.[3] Therefore, the decision was made to default on the payments to Kreklau and on the Kreklau property and — however the — there was still a desire on my part as a trustee to have retirement benefits for the employees.

"Therefore, Trust II was created to start a new — essentially in my mind called a pension plan for the employees of the professional corporation."

At the end of the 1981 fiscal year, Trust I had an asset value exceeding $15,000. At the end of the two succeeding fiscal years, Trust I had asset values of $2,296 and $484, respectively. Trust II's value for the 1982 fiscal year exceeded $15,000, and its assets for the next fiscal year had a value in excess of $88,000.[4]

The trial court concluded that plaintiff was not entitled to specific performance against Elder and Keene because:

"The evidence suggests that the intent of Defendants, though not disclosed to the plaintiff, was that no binding contract be created [between the assignors and assignees under the assignments] until such a time as the legislation then pending in Congress became clarified. This is evidenced by the fact that pertinent portions of the assignment documents, including the purchase price, were left blank. Further, the documents were never delivered or recorded. Thus, there was no contract * * *."

Plaintiff contends that the court erred by finding that the assignments were not consummated contracts and that they therefore provided plaintiff with no recourse against Keene and Elder.

■ Defendants argue that, under *Falk v. Amsberry,* 290 Or 839, 626 P2d 362 (1981), plaintiff cannot assign error to the

---

[3] The property that plaintiff contracted to sell Trust I was subject to an underlying contract under which plaintiff was the purchaser and the Kreklaus were the sellers.

[4] Michael testified that, early in the negotiations over the land sale contract, Elder represented to him that Trust I "had a history of funding and would continue to be funded by Dr. Keene and that in fact the funding was mandatory." *See* note 5, *infra.*

finding, because it made no motion in the trial court based on the insufficiency of the evidence to support the finding. Plaintiff argues that the *Falk* requirement cannot apply to a plaintiff, at least in connection with issues on which it has the burden of proof. There is a better answer to defendants' argument. However plaintiff characterizes it, the point of its argument is not that there was insufficient evidence to support the finding but that the finding was wrong and should be reversed by us on *de novo* review. We conclude that there is no preservation problem.

The focus of defendants' argument that the assignments were not consummated is the fact that they contain the unfilled blank spaces shown in our quotations from them. The blanks are not completed to show *the day* in May, 1982, that the assignees were to assume the purchaser's responsibilities under the land sale contract; the principal balance as of the date of the instrument is not shown; nor, for that matter, is the date of the instrument; and the date through which interest had been paid is not shown on the space the forms contain for that information.

■ Defendants rely on *Bagley v. Constant,* 268 Or 208, 519 P2d 1255 (1974), where the court held that a real property purchase option contract was too indefinite to be enforceable, because it did not specify the rate of interest on or number of years over which annual payments were to be made in the blank spaces left in the contract for that data. This case is different from *Bagley.* Unlike the contract there, the assignments here can and must be read in the light of other documents that explain their terms, *i.e.*, the contract that they assigned and the documents relating to the performance of that contract. Unlike the *Bagley* contract, the assignments here *do* define *a* time for performance, *i.e.*, "on and after May, 1982" (although they do not define the time as specifically as the parties or their typists indicated by the insertion of the blanks after "May" that they *might* have planned to do).

■ The Supreme Court said in *Van v. Fox,* 278 Or 439, 564 P2d 695 (1977):

> "Essentially, then, the resulting standard becomes one of substantial fairness to both parties. Neither party to a contract should be required to perform additional, material terms to which he did not either explicitly or implicitly agree. On the

other hand, however, neither party should be allowed to avoid his contractual duties merely because the language which was utilized to express the agreement is less specific and complete than that which a careful lawyer would ordinarily employ." 278 Or at 446.

Extrinsic evidence is admissible to resolve questions of indefiniteness and of whether the parties' minds met. *See Van v. Fox, supra; Jones v. Nunley,* 274 Or 591, 547 P2d 616 (1976).

The contract between plaintiff and Trust I provides that the purchaser is to make payments on the first day of each month. The evidence showed that the May, 1982, payment was made by the Trust in late April. There were no payments due in May, and defendants point to and we find no other specific vendee's duties that necessarily had to be performed on a particular day in that month under the land sale contract. It is therefore of no consequence what *day* in May the assignees were to become responsible for performance of the contract. Under these facts, the assignments would have been sufficiently definite to be enforceable had they simply set forth an effective date of "May, 1982." The unfilled typed blank spaces between the month and year on the two assignment forms do not render them indefinite. All those spaces demonstrate, in themselves, is that Keene, Elder and Trust I did not avail themselves of the opportunity to include a nonessential term in the assignments at the time they executed them.

The other blank spaces in the assignments are not even arguably relevant to their definiteness. Both the principal balance as of May, 1982, and the date through which interest was paid were readily ascertainable from documents which were in evidence and which were available to Keene, Elder and Trust I at the time they executed the assignments. We reject defendants' argument that the assignments were not definite enough to be enforceable.

■    Defendants also argue that the blanks in the assignment instruments, together with other evidence which they adduced at trial, show that Trust I, Elder and Keene did not *intend* to be bound by the instruments. Even assuming that the subjective intent of the contracting parties can be of any relevance under these circumstances, we disagree with defendants about what the evidence shows their subjective intent to have been. The principal point defendants make is:

"* * * The proposed purchase by Keene required him to borrow from Trust I. However, legislation was pending at the time which would have limited the amount one could borrow from such a trust to 50 percent of one's vested interest to a maximum of $50,000 per year. Previously, there was no such limitation. The effect of the legislation was that Keene could not possibly have purchased the property as proposed. The legislation was signed by the President on September 3, 1982. Donald Laird, an attorney specializing in professional corporations and employee benefit plans, knew in early May, 1982, that some sort of legislation would pass. Oscar Michael received the proposed assignments (Trust I to Elder to Keene) on May 18, 1982. As a result of the pending legislation, the proposed assignments were not completed. * * *"[5]

The argument is circular. Trust I, Elder and Keene signed assignments in May which were consistent with legislation that was *then* in effect but which they anticipated might be inconsistent with legislation that they had reason to believe would soon be adopted. The mere fact that it may have been *imprudent* for those defendants to agree to the assignments does not lead us to infer that they *did not* so agree, in the face of the admitted fact that they *signed* the assignment instruments in May, 1982, notwithstanding their doubts about the future validity of the assignments. We are not convinced by the testimony of defendants and their witnesses that they intended to make the effectiveness of the assignments contingent on Congressional action.

We are also unconvinced by defendants' argument that the parties to the assignments manifested an intent not to be bound by them by leaving the blank spaces in them. It seems to us to be contrary to common sense—and we find it to be contrary to the fact here—for a person who does not want to be bound by a contract to sign it and hope that omissions in its text will render it inoperative. We conclude that the assignments from Trust I to Elder and from Elder to Keene were binding contracts. Plaintiff was a third-party beneficiary of the assignments, and any after-the-fact attempts to defeat plaintiff's rights by cancelling the assignments were nugatory.

---

[5] The parties base a number of arguments on federal tax law pertaining to professional corporations. We emphasize that what is relevant here is the parties' understanding of the federal statutes, not their "real" meaning. Nothing in this opinion is intended to construe or comment on the meaning of those statutes.

*See Stan Wiley v. Berg,* 282 Or 9, 15-16, 578 P2d 384 (1978); Restatement (Second) Contracts, § 311 (1981). The trial court erred by denying plaintiff's claim for specific performance and related relief against Keene and Elder.

■  Plaintiff next assigns error to the trial court's denial of plaintiff's creditor's suit against Trust II. Assuming without deciding that that remedy could be available against the trust, it is premature at this time. *See First Nat. Bank v. Manassa,* 80 Or 53, 150 P 258 (1915).

■  Plaintiff contends next that the court erred by refusing to permit plaintiff to amend its complaint late in the trial to add a claim asserting personal liability against Keene. The relief plaintiff sought against Keene through that claim was identical to the relief plaintiff sought against him through its claim for specific performance. The assignment is mooted by our holding that plaintiff is entitled to have the agreement specifically enforced against Keene.

Plaintiff's remaining assignments pertain to the trial court's award of attorney fees to Keene, the corporation and Trust II.[6] The award was apparently based on our holding in *Golden West Insulation v. Stardust Investment Co.,* 47 Or App 493, 615 P2d 1048 (1980), that a prevailing litigant who is not a party to the contract may recover attorney fees in an action on a contract that provides for the recovery of attorney fees. *See* ORS 20.096. The land sale contract here so provides.

■  The award of attorney fees to Keene is nullified by our reversal of the judgment in his favor on the merits. We also reverse the award of attorney fees to the other defendants. Neither plaintiff's claim against the corporation nor its claim against Trust II was sufficiently related to the contract to warrant the application of the *Golden West Insulation* rule here.

---

[6] The attorney fees were awarded to Keene, Trust II and the corporation through a separate judgment after the judgment on the merits had been entered. The earlier judgment had provided that "judgment is entered in favor of the defendants for their costs, disbursements and attorney fees to be taxed in accordance with ORCP 68," but that judgment made no actual monetary award of attorney fees. Although plaintiff's assignment of error purports to challenge an award of attorney fees to Elder as well as the award to the other defendants, we find nothing in the judgments appended to plaintiff's notice of appeal or amended notice of appeal that awards attorney fees to Elder pursuant to ORCP 68. In any event, the effect of our disposition is to reverse *all* awards of attorney fees that the trial court made to the defendants.

Judgments reversed and remanded with instructions (1) to vacate the entry of judgment for costs, disbursements and attorney fees in favor of defendants and (2) to enter judgment for plaintiff and against defendants Keene and Elder as sought by plaintiff under first claim for relief in plaintiff's fourth amended and supplemental complaint; otherwise affirmed.