565 A.2d 737

**Marie T. BIGGINS, Appellee,**

v.

**Murray J. SHORE and Angelo D. Guerra, individually and t/a Shore & Guerra Realtors, Appellants.**

Supreme Court of Pennsylvania.

Argued Jan. 18, 1989.

Decided Oct. 19, 1989.

150

Vincent B. Mancini, John J. Yannacone, Media, for appellants.

Richard M. Bockol, Bala Cynwyd, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

FLAHERTY, Justice *.

This case requires us to reconsider our long-standing adherence to section 142 of the Restatement of Contracts, which makes a contractual gift to a donee beneficiary irrevocable upon execution of the contract, in contrast with section 311 of the Restatement (Second) of Contracts, which permits revocation of the gift at any time before the donee manifests reliance or acceptance. We hold that abandonment of Restatement § 142 would work an injustice on the parties in this case, and that there is no need to adopt Restatement (Second) § 311 merely to align ourselves with the "weight of authority" in other jurisdictions.

The facts are as follows. The appellee, Marie T. Biggins, is the widow of the late Robert A. Biggins, formerly a partner in the appellants' realty firm. On October 29, 1979,

* This case was reassigned to this author.

Biggins departed the firm and sold his interest to appellants Shore and Guerra. Paragraph 4 of the sales agreement recited the consideration Biggins was to receive for his share of the partnership:

4. The consideration for this sale, payable in cash to Biggins by S–G, is as follows:

(a) Eight Thousand ($8,000.00) Dollars upon execution of this Agreement, as earned draws.

(b) Six Thousand Nine Hundred Thirty-two ($6,932.00) Dollars on or before August 15, 1981.

(c) Eleven Thousand ($11,000.00) Dollars on or before August 15, 1982.

(d) Commencing June 1, 1980, S–G shall pay to Biggins for life the sum of Thirty-five ($35.00) Dollars on each settlement held on or after June 1, 1980 on any type of transaction, said sum to be paid within five (5) days after settlement. Upon the death of Biggins, the said Thirty-five ($35.00) Dollars payment shall continue and be paid to Marie T. Biggins for her life. In the event of the death of Biggins and Marie T. Biggins within six (6) years of the date of this agreement, the Thirty-five ($35.00) Dollars payment shall be paid to Robert G. Biggins, as Trustee for Anthony Biggins, Thomas Biggins and Jonathan Biggins. These payments to Robert G. Biggins shall continue for a period of six (6) years.

Paragraph 4(d) of the contract thus prescribed that part of the purchase price for Biggins's interest in the firm was to be paid to Biggins and his wife for life. Marie T. Biggins was therefore a third-party donee beneficiary under the sales agreement.

In 1982, however, Biggins drafted the following memorandum:

3 June 1982

To: Murray J. Shore and Angelo D. Guerra

From: Robert A. Biggins

Subject: Award of Options under an Agreement dated 26 October 1979 between Robert A. Biggins, Murray J. Shore and Angelo D. Guerra

(1) I hereby award you the following Options to be exercised by you within 30 days of notification of my death opting for either A or B Option.

(A) Keep in full force and effect Paragraph 4B, 4C and 4D under the above mentioned Agreement.

(B) Change Paragraph 4C of the Agreement to read: Upon the death of Biggins, pay the sum of (fifteen) $15.00 Dollars to St. Joseph's Preparatory School 18th and Girard Avenue, Philadelphia, Pa., on each settlement for a period of not less than (three) 3 years. Change Paragraph 4A and Paragraph 4C to read as follows: Any sums of money not paid to Robert A. Biggins under Paragraph 4B and 4C shall not be paid to the estate of Robert A. Biggins but a lump sum of $500.00 (Five Hundred) Dollars shall be paid to St. Joseph's Preparatory School if the sum payable to Robert A. Biggins shall excede [sic] $500.00. Any sums payable to Robert A. Biggins under $500.00 shall be paid to St. Joseph's Preparatory School.

(2) If you chose to exercise Option B, I hereby release you from all claims that may be brought against you and release you from from [sic] the obligations of Option A.

(3) All other Terms and Conditions of the Agreement shall remain in full force and effect.

My hand and seal affixed 3 June 1982.

s/ Robert A. Biggins

Biggins sealed the memorandum in an envelope marked "To be opened only at the death of Robert A. Biggins," and gave the envelope to his former partner, appellant Angelo D. Guerra. After Biggins died on May 17, 1984, Mr. Guerra's wife opened the envelope and found the memorandum. Appellants Shore and Guerra chose to make reduced payments to St. Joseph's under Option B of the memorandum rather than the payments to Biggins's widow under paragraph 4(d) of the original contract.

Mrs. Biggins brought suit to enforce her rights under the original contract. The appellants answered that the con-

tract had been modified by the 1982 memorandum and that Mrs. Biggins was entitled to nothing. Mrs. Biggins responded that the alleged modification was ineffective, and moved for summary judgment, which was granted.

 Superior Court affirmed, *Biggins v. Shore*, 365 Pa.Super. 237, 529 A.2d 487 (1987), holding that the rights of Mrs. Biggins, a donee beneficiary of the original contract, vested indefeasibly upon the execution of the contract and could not be destroyed by a subsequent modification of the contract by the contracting parties.[1] The court based its holding on *Logan v. Glass*, 136 Pa.Super. 221, 7 A.2d 116 (1939), *aff'd per curiam*, 338 Pa. 489, 14 A.2d 306 (1940), which is a restatement of the long-standing rule that a donee beneficiary's contractual rights vest immediately, that they may not be modified by the contracting parties unless the power to modify has been expressly reserved in the contract, and that the donee beneficiary has a right of action to enforce the benefit conferred by the contract. This is the same rule expressed in the Restatement of Contracts, § 142.[2] Under this rule, Mrs. Biggins was clearly entitled to summary judgment, as the original 1979

1. The court also based its holding on the alternative theory that, even if the parties retained the power to modify the original contract, the attempt to do so pursuant to the 1982 memorandum was ineffective because an option contract expires upon the death of the offeror. Although the hypothesis is correct, *see, e.g., Cohen v. Goldberg*, 431 Pa. 192, 244 A.2d 763 (1968), the conclusion does not follow, for the 1982 memorandum was not an option contract, despite the lay terminology used by Biggins. *An option contract is a promise which limits the promisor's power to revoke an offer. Verstine v. Yeaney*, 210 Pa. 109, 59 A. 689 (1904); Restatement (Second) of Contracts, § 25. Although the 1982 memorandum proposed a modification of the installment payments required under the original contract, the parties did not exchange consideration for a promise not to revoke an offer, and Biggins, in fact, never promised not to revoke his offer.

2. Restatement of Contracts, § 142, reads:
 § 142. VARIATION OF THE DUTY TO A DONEE BENEFICIARY BY AGREEMENT OF PROMISOR AND PROMISEE.
 Unless the power to do so is reserved, the duty of the promisor to the donee beneficiary cannot be released by the promisee or affected by any agreement between the promisee and the promisor, but if the promisee receives consideration for an attempted release or

contract reserved no power to modify her rights as donee beneficiary.

Appellants, however, would have us adopt instead the "modern" rule set forth in the Restatement (Second) of Contracts, § 311,[3] which permits modification of the rights of a donee beneficiary prior to acceptance of or reliance on the gift, unless the contract specifically prohibits modification. In this way, the Restatement (Second) eliminates the distinction between creditor and donee beneficiaries, combining both categories under the designation "intended third party beneficiaries," and treats all intended third party beneficiaries in the same way that creditor beneficiaries were treated under the original Restatement. If we were to adopt the so-called modern rule, then summary judgment in favor of the appellee would be improper, and we would have to remand the case for a determination of whether Mr. Biggins's attempted modification or discharge of her rights was effective under Restatement (Second) of Contracts, § 311.

The rule embodied in the original Restatement has been the settled law of this Commonwealth for at least one hundred fifty-two years. A distinction between donee and

discharge of the promisor's duty, the donee beneficiary can assert a right to the consideration so received, and on doing so loses his right against the promisor.

**3.** Restatement (Second) of Contracts, § 311 reads:

**§ 311. Variation of a Duty to a Beneficiary**

(1) Discharge or modification of a duty to an intended beneficiary by conduct of the promisee or by a subsequent agreement between promisor and promisee is ineffective if a term of the promise so provides.

(2) In the absence of such a term, the promisor and promisee retain power to discharge or modify the duty by subsequent agreement.

(3) Such a power terminates when the beneficiary, before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of the promisor or promisee.

(4) If the promisee receives consideration for an attempted discharge or modification of the promisor's duty which is ineffective against the beneficiary, the beneficiary can assert a right to the consideration so received. The promisor's duty is discharged to the extent of the amount received by the beneficiary.

creditor beneficiaries was recognized by this Court prior to 1837. In *Blymire v. Boistle,* 6 Watts 182 (1837), it was held that a creditor beneficiary could not sue upon a promisor's duty to indemnify a debtor-promisee, whereas a donee beneficiary could enforce a contract in which the promisor undertakes to confer a gratuitous benefit. The Court noted that "there appear to be reasons of substantial justice in favor of [the distinction], as well as the authority of decided cases." *Id.* at 184.

In the *Blymire* case, Blymire promised Gladstone to pay Gladstone's debt to Boistle. When Blymire failed to pay Boistle, Boistle sued on Blymire's promise to Gladstone, and obtained judgment against Blymire in the trial court. In reversing, this Court explained that Boistle, as a creditor beneficiary, still had a cause of action against Gladstone on the original debt, independent of the Gladstone–Blymire contract, and thus did not need a right of action against Blymire in order to be protected. Moreover, Gladstone, the promisee, had a right of action against Blymire for the indemnity promised. Were Boistle permitted to sue Blymire on the contract, Blymire would be liable both to Gladstone, the promisee, and to Boistle, the creditor beneficiary. In the words of the late Mr. Justice Sergeant:

> If then by this action Blymire is liable also to Boistle, he may be twice sued. Who should be preferred? or might not Blymire in one event, be compelled to pay both? The equity of the case would be, and chancery would decree, that Blymire should pay but once, and that the money should go to Boistle on his releasing Gladstone. But in two common-law suits against Blymire it might be difficult to effect this equity. The suits must, therefore, be by Gladstone against Blymire, and by Boistle against Gladstone, and thus Blymire would be released by one payment to Gladstone, and Gladstone exonerated by paying Boistle; unless one suit should be brought in the name of Gladstone for the use of Boistle against Blymire.

*Id.* In further explanation of the rule, the Court stated:

> [W]hen a debt already exists from one person to another, a promise by a third person to pay such debt, being for

the benefit of the original debtor, and to relieve him from the payment of it, he ought to have a right of action against the promisor for his own indemnity; and if the promisor were also liable to the original creditor, he would be subject to two separate actions at the same time, for the same debt, which would be inconvenient, and might lead to injustice.

*Id.* The converse of this rule, that a donee beneficiary does have a right of action against the promisor in a third-party beneficiary contract, *id.*, has been consistently applied, and has been justified by the fact that the donee beneficiary has no cause of action against the promisee, for there is no debt independent of the contract, as well as by the fact that in an action by the promisee against the promisor, the promisee might recover only nominal damages, he not being entitled to indemnification.

The rule of *Blymire v. Boistle* was restated in *Brill v. Brill*, 282 Pa. 276, 279–80, 127 A. 840 (1925), as follows:

[I]f the promise be to pay money to a third person, but it is made for the benefit and in relief of the other party to the agreement, the third person obtains no rights under the contract. If, on the other hand, the promise to pay to the third person is not for the benefit of the other party to the contract but for that of the third person himself, the latter has a legal and equitable interest in the contract which enables him to enforce rights thereunder, even though he himself was not a party to the consideration paid to the promisor.

*Brill* held that the rights of the donee beneficiary vested indefeasibly at the time of the contract, and thus could not be modified or terminated by the contracting parties without his consent. *Id.*, 282 Pa. at 283, 127 A. 840.

It is therefore clear that the rule set forth in section 142 of the original Restatement is an accurate statement of the law which has long existed in Pennsylvania. *Logan v. Glass, supra,* did not "adopt" section 142 of the Restatement, but simply recognized the correspondence of the

Restatement rule with the long-standing law of this Commonwealth.

In the face of the foregoing history and purpose of the rule, the appellants offer only one argument for us to abandon a concept which "has been rejected by the Restatement (Second) of Contracts and the weight of authority in this country." It is asserted that this case demonstrates "the need for, and equitable nature of" the modern rule, because the existing rule "may prevent perfectly proper readjustments in the light of misconduct of the beneficiary, the birth of children, or a family financial crisis." Brief for Appellants at 12–13, citing Comment F to Restatement (Second) of Contracts § 311.

We disagree. The existing law permits a contracting party, if he intends to make readjustments, to reserve the power to do so when he enters the contract. Section 142 of the Restatement of Contracts begins: *"Unless the power to do so is reserved,* the duty of a promisor cannot be released...."* In similar fashion, section 311 of the Restatement (Second) begins: "Discharge or modification of a duty to an intended beneficiary ... is ineffective *if a term of the promise so provides."* In either case, the contracting parties are free to confer a benefit indefeasibly or not, as they wish. The difference, of course, is that in the absence of an express term in the contract, the existing rule makes the gift indefeasible whereas the Restatement (Second) permits modification.

Pennsylvania's existing rule, unlike the Restatement (Second) position, is consistent with the concept of a gift. When parties enter a contract which confers a gift, there is no reason to suppose that the gift may be withdrawn at a later date. The late Mr. Justice Kephart summarized the history of the rule permitting third party beneficiaries to enforce rights under contracts made for their benefit in *Greene County v. Southern Surety Co.*, 292 Pa. 304, 313, 141 A. 27, 31 (1927), where he concluded: "Whatever the objections to recovery by the sole beneficiary, they are insufficient to overcome the undoubted merit and justice of his cause."

For us now to invert a rule of such ancient standing would work a substantial injustice in this case. Everyone connected with the contract at issue had a right to rely on the long-standing law which prevents discharge or modification of the gift in the absence of a specific reservation of the power to do so. To permit Biggins, from his grave, to destroy the annuity of his widow would not be equitable.

We see no sound reason to change the law and to adopt the new Restatement view; the Restatement (Second) affords no greater freedom of contract than exists at present. Contracting parties may continue to rely on the rule which has existed in Pennsylvania at least since 1837; if they do not intend to convey an indefeasible benefit, they need merely say so in the contract. Accordingly, we affirm the order of the Superior Court.

Order affirmed.

STOUT, Former Justice, did not participate in the decision of this case.

NIX, C.J., joins the opinion announcing the judgment of the court, and files a concurring opinion, which ZAPPALA, J., joins.

LARSEN and McDERMOTT, JJ., concur in the result.

PAPADAKOS, J., files a dissenting opinion.

NIX, Chief Justice, concurring.

I am not opposed to the adoption of section 311 of the Restatement of Contracts (Second). I would nonetheless limit its application to third party beneficiary contracts entered into after the adoption of such a change.[1] How-

1. As has been noted, the Restatement (Second) did not explain the reason for departing from the former rule. I agree with Mr. Justice Flaherty that the same result could have been obtained under the former Rule if the promisor had so desired by merely reserving the right to modify the contract. Nevertheless, because the Rule embraces a fundamental principle of contract law and a majority of the states have chosen to adopt it, it may be advantageous for a state with high interstate business activity, such as Pennsylvania, to be a part of that majority.

ever, our longstanding firm adherence to the principles of law enunciated in *Blymire v. Boistle*, 6 Watts 182 (1837, Pa.), and *Brill v. Brill*, 282 Pa. 276, 127 A. 840 (1925); *see, e.g., Falsetti v. Local Union No. 2026, United Mine Workers of America*, 400 Pa. 145, 161 A.2d 882 (1960); *Burke v. North Huntingdon Twp. Municipal Authority*, 390 Pa. 588, 136 A.2d 310 (1957); *In re Hitchcock's Estate*, 385 Pa. 569, 124 A.2d 360 (1956); *Pennsylvania Supply Co. v. National Casualty Co.*, 152 Pa.Super. 217, 31 A.2d 453 (1943); *Logan v. Glass*, 136 Pa.Super. 221, 7 A.2d 116 (1939), *affirmed*, 338 Pa. 489, 14 A.2d 306 (1940), together with the 150–year business practice in this Commonwealth of reliance upon that rule of law dictate against a precipitous change as is urged by the dissent.

While it possibly may be that Mr. Biggins did not fully understand the consequences of his actions, albeit he had been a successful realtor for a considerable period of time, sound jurisprudential concerns prevent use of an assumption of commercial naivete on the part of the donor/promisor here, as the basis for a radical departure from what is now a commercial tradition.

I therefore join the opinion of the Court.

ZAPPALA, J., joins this concurring opinion.

PAPADAKOS, Justice, dissenting.

It is ludicrous to suggest that there was any actual reliance by either Mr. or Mrs. Biggins on either the new or the old Restatement rule at issue in this case. Neither were lawyers. Neither were counseled by lawyers at the time the critical events in this case occurred. Mr. Biggins merely adopted certain "homemade" and extremely inexact devices to arrange his financial affairs and we must now decide which is the sounder of two rules that ought to be applied to the facts at hand. I vigorously dissent from the view expressed by the majority that that choice depends solely or even principally on one's natural instinct not "to destroy the annuity of his [Biggins] widow ...". Majority

op. at 158. Which rule a common law court applied or adopts should not depend on extra-judicial sympathy for an individual litigant, however justified. All persons must be equal before the Court, whatever their status. To do otherwise is to indulge in result oriented decision making that is ultimately destructive to the rule of law itself. It is wrong to pick a winner for extraneous reasons and then adopt a rule to reach the pre-chosen result. To do so, as I believe the Majority has done in this case, lends credence to the theories of "realists" like the late Judge Jerome Frank, and the modern "critical legal studies" radicals that ours is not a system of law at all, but merely one of individual preference.

The Majority have blinded themselves to the subtlety of the common law system. We are not a Civil Law court applying a pre-adopted Code. That does not mean, however, that we decide matters randomly, case by case, *or*, that we can never abandon a precedent once it is established. We are responsible for formulating the governing rules in many areas of our law and for fine tuning those rules and keeping them in accord with modern expectations. I am convinced that Section 311 of the Second Restatement is the better rule to adopt in this Commonwealth, even if only on a prospective basis. What follows are my views as to why this is so and how I would resolve the instant case. The facts in this case are as follows. Appellee, Marie T. Biggins, is the widow of the late Robert A. Biggins, a former partner in Appellants' realty firm. On October 29, 1979, Appellants, Shore and Guerra, entered into an agreement with Robert A. Biggins for the buy-out of Biggins' partnership interest in the realty company. Paragraph 4 of this agreement provided:

The consideration for this sale, payable in cash to Biggins by S–G, is as follows:

a) Eight Thousand ($8,000.00) Dollars upon execution of this Agreement, as earned draws.

b) Six Thousand Nine Hundred Thirty-two ($6,932.00) Dollars on or before August 15, 1981.

c) Eleven Thousand ($11,000.00) Dollars on or before August 15, 1982.

(d) Commencing June 1, 1980, S–G shall pay to Biggins for life the sum of Thirty-five ($35.00) Dollars on each settlement held on or after June 1, 1980 on any type of transaction, said sum to be paid within five (5) days after settlement. Upon the death of Biggins, the said Thirty-five ($35.00) Dollars payment shall continue and be paid to Marie T. Biggins for her life. In the event of the death of Biggins and Marie T. Biggins within six (6) years of the date of this agreement, the Thirty-five ($35.00) Dollars payment shall be paid to Robert G. Biggins, as Trustee for Anthony Biggins, Thomas Biggins and Jonathan Biggins. These payments to Robert G. Biggins shall continue for a period of six (6) years.

Thus the agreed upon purchase price owed Biggins for his partnership interest was to be held by the buyers, S–G, and paid out in installments in the manner prescribed by Biggins in their agreement.

On June 3, 1982, Robert A. Biggins delivered a sealed envelope to Appellant, Angelo Guerra. On the face of the envelope was writing to the effect that it was not to be opened until Mr. Biggins' death. Upon Biggins' death in 1984, Mr. Guerra's wife opened the envelope and found a handwritten document which stated:

3 June 1982

To: Murray J. Shore and Angelo D. Guerra

From: Robert A. Biggins

Subject: Award of Options under an Agreement dated 26 October 1979 between Robert A. Biggins, Murray J. Shore, and Angelo C. Guerra.

1. I hereby award you the following Options to be exercised by you within 30 days of notification of my death opting for either A or B option.

A. Keep in full force and effect Paragraph 4B, 4C and 4D under the above mentioned Agreement.

B. Change Paragraph 4C of the Agreement to read: Upon the death of Biggins, pay the sum of (fifteen) $15.00 Dollars to St. Joseph's Preparatory School, 18th and Girard Avenue, Philadelphia, Pa., on each settlement for a period of not less than (three) 3 years. Change Paragraph 4A and Paragraph 4C to read as follows: Any sums of money not paid to Robert A. Biggins under Paragraph 4B and 4C shall not be paid to the estate of Robert A. Biggins, but a lump sum of $500.00 (Five Hundred) Dollars shall be paid to St. Joseph's Preparatory School if the sum payable to Robert A. Biggins shall excede [sic] $500.00. Any sums payable to Robert A. Biggins under $500.00 shall be paid to St. Joseph's Preparatory School.

2. If you chose [sic] to exercise Option B, I hereby release you from all claims that may be brought against you and release you from the obligations of option A.

3. All other Terms and Conditions of the Agreement shall remain in full force and effect.

My hand and seal affixed 3 June 1982.

Robert A. Biggins [1]

It appears that within the time specified in this instrument, Appellants chose to exercise "Option B" of this June 3 document and notified St. Joseph's Preparatory School of its rights thereunder. Under the choice made, as interpreted by Appellants, fifteen dollars per real estate settlement was to go to St. Joseph's and that for a minimum period of only three years, as contrasted with the payment of thirty-five dollars per settlement to Mrs. Biggins for life—which had been provided in the original agreement. Under this choice, Mrs. Biggins was to receive nothing.

1. As explained below in Part II of this Dissenting Opinion, Mr. Biggins did not offer Appellants a true option as that term is understood in contract law. Actually, what he attempted to give them was a "choice" of whom to pay.

It must also be noted that Option B of this June 3, 1982, letter provides for changing Paragraph "4C" of the original Agreement, not Paragraph "4D". This is an obvious typographical error. The reference only makes sense as a reference to Paragraph "4D."

Mrs. Biggins filed a complaint against Appellants asserting that she was the third party beneficiary of the October 29, 1979 agreement and was the person entitled to the monies from that agreement. Appellants answered and raised new matter, contending that the original agreement had been modified by the June 3 letter and that Mrs. Biggins was entitled to nothing. She answered the new matter by arguing that the alleged modification was ineffective. She then filed a motion for summary judgment which was granted by Judge William R. Toal, Jr., of the Court of Common Pleas of Delaware County.[2]

The Superior Court affirmed in *Biggins v. Shore*, 365 Pa.Superior Ct. 237, 529 A.2d 487 (1987), in an opinion by Judge Popovich. This affirmance was based on three grounds.

(1) Mrs. Biggins was held to be a third-party donee beneficiary of the 1979 contract and, in Pennsylvania, such persons have a clear right of action to enforce the duty of the promisors to perform. This contractual right vests immediately upon the signing of the contract and (as the Majority stresses) the rule in Pennsylvania for some years has been that the third-party donee beneficiary's contractual rights are irrevocable and may not be modified unless the power to discharge or modify the same has been expressly reserved in the contract. (No such reservation was contained in the instant agreement.) This rule is set forth in *Logan v. Glass*, 136 Pa.Superior Ct. 221, 7 A.2d 116 (1939), *affirmed per curiam* at 338 Pa. 489, 14 A.2d 306 (1940), and the Superior Court relied upon it in this case. The rule in *Logan*, in turn, applies Section 142 of the First Restatement of Contracts. The First Restatement distinguished between third-party donee beneficiaries and third-party creditor beneficiaries with reference to the question of when their respective rights under a contract benefiting them would vest irrevocably. A donee beneficiary's rights

2. It should be noted that by choosing Option B, Appellants provided a significant financial gain to themselves as compared with the original provision in favor of Mrs. Biggins.

vested irrevocably under Section 142 as soon as the contract in his or her favor was made, unless the right to modify the contract had been expressly reserved. A creditor beneficiary's rights, on the other hand, could be changed at any time unless a term of the agreement provided that those rights could *not* be modified, or the beneficiary had justifiably relied on the promise before he or she received notification of the change. First Restatement of Contracts Section 143.

Section 311 of the Second Restatement of Contracts now consolidates these two sections and treats both types of third-party beneficiaries in the same manner such that the approach applied to creditor beneficiaries in the First Restatement now applies to donee beneficiaries as well. Thus, the beneficiaries' rights can be changed at any time unless the agreement provides that it cannot be modified or there has been reliance thereon. If the rule of the Second Restatement (§ 311(3)) were applied to the instant facts and no other considerations entered into the picture, Mrs. Biggins could not prevail unless she proved justifiable reliance upon the original agreement before she received notification of a change in beneficiaries. The requirement to establish such a factual showing would have precluded the grant of summary judgment in her favor. The Superior Court declined to apply the rule of the Second Restatement to this case, however, relying on *Logan v. Glass, supra.*

(2) Even if Mr. Biggins had retained the power to alter Mrs. Biggins' rights as a third-party beneficiary, either through expressed language in the agreement or by operation of law, the Superior Court reasoned that summary judgment still was properly granted in Mrs. Biggins' favor because there was no valid acceptance by Appellants of Mr. Biggins' offer of what the Superior Court characterized as an "option contract" to them prior to his death. Under general contract law principles, in order to be validly accepted, an offer must be communicated to the offeree prior to the offeror's death, otherwise it lapses. While this rule does not apply to option contracts under the Second Re-

statement of Contracts, Section 37, the Superior Court concluded that, based on the authority of *Bosses v. Mahalsky*, 365 Pa. 184, 74 A.2d 93 (1950), Pennsylvania does not recognize this exception to the general rule.[3] Hence, there was no lawful acceptance of the "option contract" in the instant case. As discussed in Part II of this Dissenting Opinion below, what was involved here is not a true "option" as that term is understood in contract law.

(3) The Superior Court rejected the argument that the so called "Award of Options" granted to Appellants by the June 3, 1982, letter constituted a valid *inter vivos* gift. The Superior Court reasoned that delivery of such a gift was an impossibility because there were no rights capable of being delivered. The rights to the money under the original contract were indefeasibly vested in Mrs. Biggins upon the making of the contract based on *Logan v. Glass, supra,* and the rule under the First Restatement of Contracts, as previously discussed.

We granted Appellant's petition for allowance of appeal principally to consider the question of whether § 311 of the Second Restatement of Contracts should be adopted in Pennsylvania, a matter of first impression for this Court. I believe that the rule of Section 311 of the Second Restatment is sound and that we should accept the invitation to adopt the rule in Pennsylvania. As a consequence, I would hold that the summary judgment entered in favor of Mrs. Biggins in this case should be reversed.

I.

At first blush, it is not immediately apparent why this case should be resolved as a matter of contract law principle, and in particular the rules governing third-party beneficiaries. The law of powers, gifts, trusts, subrogation, or

3. In *Bosses v. Mahalsky, supra,* we merely held that where an option to purchase realty was contained in a lease, it was defective because the lease was not signed by the husband of the married woman who had executed the lease, and that this defect became incurable after her death.

agency law principles might conceivably yield a more satis-factory analysis. In a leading law review article published some years ago, it was noted that:

> There are many cases in which transactions of this sort are treated by some courts as contracts between A and B which give to C a right to enforce it; and in which the right of C, if any, is to enforce his contractual right against A. Other courts insist that C's right is to be explained on principles of agency, although who is the principal and who the agent is often left in a safe obscuri-ty. Other courts deny that these transactions are con-tracts at all, but insist that they are trusts, executed gifts and the like.[4]

The move toward uniform treatment of these cases as third-party beneficiary/contract law cases has been linked to the gradual acceptance in the country, after initial hesi-tancy, of third-party beneficiary doctrine.[5] The history of the acceptance of third-party beneficiary doctrine in Penn-sylvania, noting the longstanding right of third-party *donee* beneficiaries to sue to enforce a contract made for their benefit, is detailed in Mr. Justice Kephart's learned opinion in *Green County for Use of Crescent–Portland Cement Co. v. Southern Surety Co.*, 292 Pa. 304, 141 A. 27 (1927). He stated on behalf of this Court that "Whatever the objections to recovery by the sole beneficiary, they are insufficient to overcome the undoubted merit and justice of his cause." 141 A. at 31. Despite problems that have arisen in other jurisdictions, it would seem that Pennsylva-nia has long been willing to categorize the type of transac-tion at issue here as a third-party donee beneficiary prob-lem, and to recognize that the beneficiary has enforceable rights. That is not to say that other areas of the law should not come into play and possibly overlap as in the instant case. They may. But it makes perfectly good

---

**4.** William H. Page, "The Power of Contracting Parties to Alter a Contract for Rendering a Performance to a Third Person," 12 Wisc.L. Rev. 141, at 151 (1937), hereinafter referred to as "Page."

**5.** Comment Note.—Right of third person to enforce contract *between* others for his benefit. 81 A.L.R. 1271, at 1283–4 (1932).

sense to treat the rights of the parties here as essentially contractual in nature, arising from the original contract between Mr. Biggins and Appellants which made Mrs. Biggins a third-party beneficiary thereto. Moreover, the parties have, in fact, treated the rights and duties at issue in this case as being contractual in nature and falling into that framework of analysis.[6]

As already noted, the First Restatement of Contracts, upon which the Superior Court relied in *Logan v. Glass, supra,* distinguishes third-party donee beneficiaries from third-party creditor beneficiaries. Section 142, adopted in *Logan v. Glass,* makes the rights of a *donee* beneficiary vest irrevocably as soon as the contract is made, unless the right to modify the contract has been expressly reserved. Section 142 provides:

§ 142. VARIATION OF THE DUTY TO A DONEE BENEFICIARY BY AGREEMENT OF PROMISOR AND PROMISEE.

Unless the power to do so is reserved, the duty of the promisor to the donee beneficiary cannot be released by the promisee or affected by any agreement between the promisee and the promisor, but if the promisee receives consideration for an attempted release or discharge of the promisor's duty, the donee beneficiary can assert a right to the consideration so received, and on doing so loses his right against the promisor.

*Comment:*

a. The reservation of power on the part of the promisee to change the beneficiary or otherwise vary the terms of a gift promise must ordinarily be expressed in specific terms. Such a power, however, exists though not so expressed in a member of a fraternal benefit society to change the beneficiary of the insurance to which his membership entitles him, unless the charter or by-laws of the society otherwise provide.

---

**6.** It is also agreed by the parties that under this contract Mrs. Biggins, to the extent she is a third-party beneficiary, is a third-party *donee* beneficiary.

Section 311 of the Second Restatement of Contracts changes this rule by bringing all third-party beneficiaries under the general umbrella of "intended beneficiaries." The rights of *all* third-party beneficiaries are then made subject to modification or discharge in some circumstances where there is no expressed provision reserving such a right in the contract itself. All third-party beneficiaries are now to be treated, in other words, under the rubric that formerly applied only to third-party *creditor* beneficiaries under Section 143 of the First Restatement. Section 311 provides in pertinent part:

*Variation of a Duty to a Beneficiary*

(1) Discharge or modification of a duty to an intended beneficiary by conduct of the promisee or by a subsequent agreement between promisor and promisee is ineffective if a term of the promise creating the duty so provides.

(2) In the absence of such a term, the promisor and promisee retain power to discharge or modify the duty by subsequent agreement.

(3) Such a power terminates when the beneficiary, before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of the promisor or promisee.

(4) . . . .

It is not readily apparent why the American Law Institute, in adopting the Second Restatement of Contracts, made this change. The simplest explanation is that the rule applied in a majority of states on this point, at the time Section 311 was drafted, was (and continues to be) the opposite of that espoused in the First Restatement.[7] The problem with this explanation is that it is not the least bit helpful in persuading anyone that the minority rule currently applicable in Pennsylvania must or must not be aban-

7. See, A.L.I. Proceedings 1967, at pp. 323–324. See also, Note, "The Third Party Beneficiary Concept: A Proposal," 57 Colum.L.Rev. 406, at 418 ff. (1957) (hereinafter cited as "Columbia Note").

doned. There is also some authority for the proposition that the Restatement rule was changed because, analytically, some courts had concluded that the distinction drawn between third-party *donee* beneficiaries and third-party *creditor* beneficiaries was vague and unworkable, and did not cover certain intermediate situations, *e.g.*, where laborers and materialmen sued on surety bonds to secure performance of building contracts.[8] Hence, the single category in the Second Restatement of "intended third-party beneficiaries." While there is certainly some merit in reducing two categories in our law down to one where possible, this reasoning is, nevertheless, of little help in resolving the question for it might well be that *all* cases should be treated as falling under the old rule governing *donee* beneficiaries rather than by now applying the old *creditor* beneficiary rule to all situations as is done in the Second Restatement. Little assistance is provided by the cases cited in Appellants' brief[9] because they all apply the majority rule of § 311 of the Second Restatement while providing virtually no explanation as to why it is superior to the rule of the First Restatement.

Trust law, of course, is the opposite of the Second Restatement of Contracts. A settlor cannot revoke a trust if, by the terms of the trust, he did not reserve such a power.[10] The rule with respect to insurance companies for a long

**8.** See, A.L.I. Proceedings 1967, at pp. 323–324; Columbia Note, *id.,* at pp. 421 ff.; see also, Page, *op. cit.,* at pp. 183–184.

**9.** *Auer v. Kawasaki Motors Corp.,* 830 F.2d 535 (4th Cir., 1987) (applying Maryland Law); *N. Bloom & Son, Ltd. v. Skelly,* 673 F.Supp. 1260 (S.D.N.Y.1987) (applying New York Law); *Bridgman v. Curry,* 398 N.W.2d 167 (Iowa, 1986); *Greenslate v. Tenneco Oil Co.,* 623 F.Supp. 573 (D.C.La.1985) (applying Federal Law); *Karo v. San Diego Symphony Orchestra Association,* 762 F.2d 819 (1985) (applying California Law); *Cascade International Investment Co. v. Keene,* 75 Or.App. 438, 707 P.2d 610 (1985); *Supplies for Industry, Inc. v. Christensen,* 135 Ariz. 107, 659 P.2d 660 (1983); *Gilmore v. Century Bank and Trust Company,* 20 Mass.App. 49, 477 N.E.2d 1069 (1985); *Brooks v. Land Drilling Co.,* 564 F.Supp. 1518 (U.S.D.C.1983) (applying Colorado Law); *Detroit Bank and Trust Company v. Chicago Flame Hardening Company,* 541 F.Supp. 1278 (D.C.Ind.1982) (applying Indiana Law).

**10.** *Damiani v. Lobasco,* 367 Pa. 1, 79 A.2d 268 (1951); *Thompson v. Fitzgerald,* 344 Pa. 90, 22 A.2d 658 (1941); Second Restatement of Trusts, §§ 330–331.

time has been likewise opposite to that of the Second Restatement of Contracts.[11]

The dominant idea that seems to have influenced a number of the revisions adopted in the Second Restatement of Contracts, including the one here at issue, was that of enhancing freedom of contract.[12] Upon due reflection, I believe that that concept provides the key to understanding the advantages of Section 311 of the Second Restatement. Section 311 seems to conform to the ordinary expectations of uncounselled persons, like Mr. Biggins, who are arranging the expenditure of their own finances. The normal assumption is that when individuals sign a contract specifying how their own money is to be distributed, and one of the parties is merely an agent in some sense, as here, that the agreement can be changed, modified or altered in a confidential manner as suits exigent circumstances, at least before any third party becomes aware of it.[13] A trust is a solemn undertaking creating property rights in a beneficiary. The ordinary view of a contract, however, is that the principal parties have the freedom to alter it from time to time to suit themselves. The rule of Section 311 better reflects these modern assumptions.

**11.** Comment c. to § 311 of the Restatement of Contracts Second reads as follows:

> c. *Life insurance.* Partly on the basis of statutes, the rule was established in a number of states in the latter part of the nineteenth century that the ordinary life insurance policy in the form then in use belonged to the beneficiary the moment it was issued, and that the insured had no power to transfer the right to any other person unless the power was reserved. That rule was not applied to fraternal benefit insurance, partly again because of statutes and partly because of charter and by-law provisions. Standard policy forms were revised to avoid the rule by reserving to the insured the power to change the beneficiary. Modern policies also provide for powers to surrender for cash, to borrow against the policy, and to assign the policy. Deletion of such a standard provision may manifest an intention that the power is not to exist.

**12.** See, A.L.I., Proceedings 1967, at pp. 323–324; and see generally, Calamari and Perillo, *The Law of Contracts,* 3d edition (West Publ.Co., 1987), § 1–3.

**13.** In this connection see, *e.g., Innes v. Potter,* 153 N.W. 604, 130 Minn. 320 (1915).

To make a third-party beneficiary contract irrevocable or incapable of modification under Section 311, *ab initio,* the contract must expressly so provide. This part of the rule also is superior to the First Restatement based on modern expectations. Requiring an express clause to make these kinds of contracts irrevocable also vivifies for the parties what the consequences are of their consensual agreement such that their minds cannot be changed later on. This has traditionally been one of the reasons that for an *inter vivos* gift to be effective, actual delivery is generally required—because it vivifies for the donor what the irrevocable step is that he is taking.[14] The same rationale applies here.

For these reasons then, I believe that Section 311 of the Second Restatement is the better rule, best suited to modern commercial and contractual expectations. We should join the majority of our sister states and adopt this rule as the law in Pennsylvania. *Logan v. Glass, supra,* to the extent that it is contrary to Section 311 of the Second Restatement of Contracts, should be expressly overruled. By adopting Section 311 there would be no reliance expectations that would be upset by our doing so. Parties could still make third-party beneficiary contracts expressly irrevocable or incapable of modification if they so wished. By adopting Section 311 we would reduce the number of conceptual categories that encumber the contract law of this Commonwealth, but more importantly, we would be doing what is required by the merit and justice of the cause.[15]

Even though, I believe that summary judgment should not have been granted in favor of Mrs. Biggins based on the application of *Logan v. Glass, supra,* there are alternative

14. In this regard see, Rohan, "The Continuing Question of Delivery in the Law of Gifts," 38 Ind.L.Rev. 1 (1962); Rohan, "Some Problems of Constructive Delivery, Agency and Proof in Gift Litigation," 38 Ind. L.J. 470 (1963).

15. See also, *McCulloch v. Canadian Pacific Ry. Co.,* 53 F.Supp. 534 (D.C.Minn., 1943). Third party beneficiary contracts are enforceable because it is just and practical to do so. There is no cogent reason why the rights of a donee beneficiary should be more sacrosanct than those of a creditor beneficiary. 53 F.Supp. at 546.

arguments which might justify summary judgment in her favor if we were to adopt Section 311.

## II.

It is conceded by the Majority that the Superior Court was wrong in finding that Mr. Biggins' June 3, 1982 letter to Appellants, opened after Mr. Biggins' death, was an "option contract." An option contract is a promise which limits the promisor's power to revoke an offer.[16] Mr. Biggins merely made an offer to Appellants to modify the original agreement by giving them a *choice* as to whom they could pay (as between "option" A and "option" B). The word "option" is sometimes used to refer to any power to make a choice, but that ambiguous use of terminology does not convert what was done here into a true option contract.[17] Mr. Biggins' offer to Appellants to modify the original agreement was not accepted by Appellants prior to the death of the offeror, Mr. Biggins. Generally, an offeree's power of acceptance is terminated when the offeror dies. *Cohen v. Goldberg*, 431 Pa. 192, 244 A.2d 763 (1968); *Achenbach v. Kurtz*, 306 Pa. 384, 159 A. 718 (1932); Second Restatement of Contracts, Section 48.

Under the view of Section 311 of the Second Restatement of Contracts, which I believe we should adopt as the law in Pennsylvania (as set forth in Part I of this Dissenting Opinion), the contracting parties would retain a *power* to modify or alter the terms of the agreement prior to the third-party beneficiary's assenting to, or relying upon, the terms made for her benefit. I am sympathetic to the idea that in this case, the promisee, Mr. Biggins, essentially, retained a unilateral power to change beneficiaries[18] during the period provided by Section 311 since the Appellants were still obliged to carry out the same duty to pay no

---

**16.** *Verstine v. Yeaney*, 210 Pa. 109, 59 A. 689 (1904), Second Restatement of Contracts, § 25.

**17.** See, Second Restatement of Contracts, § 25, Comment a.

**18.** On this point, note Corbin on Contracts, §§ 812–816; and compare with Williston on Contracts, 3d ed., §§ 396 and 397.

matter who was designated beneficiary. A change from one payee to another would impose but slight ministerial duties on Appellants. Mr. Biggins never effectively exercised such a power to change beneficiaries, however, even though he could have done so with simple ease. What he attempted to do here was to transfer the power to Appellants in the limited form of giving them a choice between "option" A and "option" B. This was an attempt to thrust more than a ministerial duty upon Appellants; it was an attempt to modify the contract by imposing upon them a substantive duty to make a choice, to change the beneficiaries or not, as they saw fit, and to expose themselves to potential expense and litigation whatever choice they made. This case is ample evidence of that exposure. Such a duty could not be thrust upon Appellants without a modification (in the form of offering this power to Appellants) was void here since it was not accepted prior to Mr. Biggins' death. Even if one viewed Appellants as Mr. Biggins' agents, that, too, should be unavailing in their present suit because under general agency law principles, the death of the principal terminates the authority of the agent.[19]

In short, since the power to modify which would be given to Mr. Biggins by Section 311 of the Second Restatement of Contracts was never effectively exercised by him, or assigned by him contractually on these facts, Mrs. Biggins still would seem to remain entitled to the benefits awarded to her under the original agreement, and hence, the summary judgment granted in her favor would seem to remain proper.

## III.

One last contention must be considered, however. The Superior Court concluded that Mr. Biggins did not make a valid *inter vivos* gift of the "Award of Options" because there was nothing to be given; Mrs. Biggins' rights vested irrevocably when the original agreement was made. Under

---

**19.** *Kern's Estate,* 176 Pa. 373, 35 A. 231 (1896); Second Restatement of Agency, § 120.

the Second Restatement view (§ 311), Mrs. Biggins' rights would not become irrevocable *ab initio*, hence, if Section 311 were adopted, the question of whether or not this was a valid gift would have to be considered. If, under the facts as pleaded, there is no way that it could be construed that a valid gift was made, then summary judgment in favor of Appellee would be correct. If, on the other hand, it is possible that there may have been a valid, completed gift here, then the summary judgment was improper. I would conclude that a valid gift *may* have been made, and that, hence, the summary judgment in favor of Appellee should be reversed.

"Rights" existing under or incident to a power can generally be assigned or transferred, and hence constitute the subject matter of a gift.[20] If this transfer was an attempt to make a completed *inter vivos* gift, such that Mr. Biggins relinquished all present dominion and control with respect to his June 3, 1982 letter to Appellants during his lifetime, but with mere enjoyment or exercise of his unilateral powers postponed, then a valid and completed gift was accomplished.[21] If, however, this was an attempt to make a testamentary disposition, that is—a will, the validity of the attempt is not clear on this record. A testamentary disposition may be defined as a gift that will take effect at death, but which the donor may change or revoke freely during his or her own lifetime. It is commonly accomplished by the writing of a will. An instrument in writing, in order to operate as a testamentary disposition must be revocable in

---

**20.** See, *Lewis' Estate,* 269 Pa. 379, 112 A. 454, 13 A.L.R. 1053 (1921); *McClellan's Estate,* 221 Pa. 260, 261, 70 A. 737 (1908); *De Charette v. De Charette,* 94 S.W.2d 1018, 264 Ky. 525 (Court of Appeals, 1936); 72 C.J.S. Powers, § 23.

**21.** Acceptance obviously occurred here since Appellants exercised the choice by picking "option" B, although this happened after Mr. Biggins' death. Acceptance of a gift is generally presumed anyway, at least where the gift is of some benefit to the donee. That is the case here because by exercising "option" B, Appellants saved for themselves a substantial part of the money that would otherwise have gone to Mrs. Biggins. Compare, *Minner v. City of Pittsburgh,* 363 Pa. 199, 69 A.2d 384 (1949); *Roop v. Greenfield,* 352 Pa. 232, 42 A.2d 614 (1945).

its nature. If upon delivery interests vest, though they are to be enjoyed in possession *in futuro;* or obligations are created which are enforceable by the parties respectively, such an instrument is a contract or transfer *inter vivos* and not a will, that is, not a testamentary disposition.[22] If Mr. Biggins, in fact, retained complete freedom to recall this letter and hence was attempting to make a testamentary disposition, his transfer would have to constitute a valid will under our law in order to be effective.[23] Based on the record before this Court, it is not clear whether Mr. Biggins, in fact, retained the ability to recall the letter during his lifetime or not, and if he did, the parties have not briefed and argued the question of whether this letter constituted a valid will.

In conclusion, I believe that the summary judgment entered in favor of Appellee, Mrs. Biggins, was incorrect and should be vacated. I would hold that Mr. Biggins retained a power to revoke or modify under Section 311 of the Second Restatement of Contracts. Rights under this power may have been effectively transferred to Appellants as a gift prior to Mrs. Biggins' assent to, or reliance upon, the agreement made for her benefit. The facts necessary to make this determination are not evident in the record. Facts necessary to determine the type of gift made (either *inter vivos* or testamentary) and therefore its validity are also not of record. Once they contended that a valid gift had been accomplished, Appellants should have been given the opportunity to prove their contention. They did not get that opportunity. On the facts pleaded, I would hold that Appellee was not entitled to judgment as a matter of law. Upon the presentation of additional evidence, it is possible that Appellants (defendants before the trial court) could show that a valid gift was made to them prior to Mrs. Biggins' rights becoming irrevocable. Hence, in my view, the grant of summary judgment here was improper.

22. See, *Estate of Logan,* 489 Pa. 29, 413 A.2d 681 (1980).

23. There is no evidence of record that this "will," if that's what it was, was ever probated. *Girard College Trusteeship,* 391 Pa. 434, 138 A.2d 844 (1958).

Under the circumstances, I would vacate the summary judgment entered in favor of Mrs. Biggins in this case and the decision of the Superior Court affirming the same, and remand the matter directly to the Court of Common Pleas of Delaware County for further proceedings.